# CLEN
## v.
## JORGENSEN

No. 2486

## Circuit Court of Appeals
### Third Circuit

## April 23, 1920

*See, also, 265 Fed. 120*

WILLIAM CLARKE MASON, Philadelphia, Pa., *for appellant*
JOSEPH NEFF EWING and PRICHARD, SAUL, BAYARD &
EVANS, Philadelphia, Pa., *for appellee*

Before BUFFINGTON, WOOLLEY, and HAIGHT, *Circuit Judges*

## PER CURIAM

J. P. Jorgensen, the plaintiff below, brought this action in the District Court for St. Thomas and St. John, Virgin Islands, against Sophia R. Clen, the defendant below, for rent due under a lease and for her ouster from the demised premises. The Court entered against the defendant a money judgment for rent found due, together with a judgment of ouster. By this appeal she seeks a review of the judgment in both its branches, alleging errors of fact in one and an error of law in the other.

■ This case — the first to come here from the Virgin Islands — is met on the threshold by a question of the jurisdiction of this court to review on appeal a judgment rendered under Danish procedure. Our jurisdiction is challenged on the ground that the action below was an action at law, and that our jurisdiction to review such an action is by writ of error — and then only as to errors of law — under the familiar distinction between actions in equity and at law and the corresponding distinction between appeals and writs of error. Roberts v. Great Northern R. R. Co., 138 Fed. 711, 71 C.C.A. 127; Smith v. Currie, 230 Fed. 803, 145 C.C.A. 113. While in our jurisprudence an action of this character is without question an action at law, we are not prepared to say what it is under Danish procedure. But insisting, nevertheless, that the action was at law, the appellee asserts — without the possibility of successful contradiction, we admit — that the defendant's right to have her case reviewed and this court's jurisdiction to review it are only such as are granted and conferred by Congress. He shows, further, that the only source of this litigant's right to appeal and of this court's appellate jurisdiction

over judgments of the courts of the Virgin Islands is the Act of Congress approved March 3, 1917, ch. 171, § 2, 39 Stat. 1132 (48 U.S.C., 1946 Ed., § 1392), and maintains, that this Act specifically provides for review of actions at law by writs of error, not by appeal, and that to such procedure this court's jurisdiction is strictly limited by the terms of the Act. Hooven v. Featherstone's Sons, 111 Fed. 81, 49 C.C.A. 229.

This statute was enacted just after the United States, under treaty with Denmark, had taken over the West Indian Islands, and is, so far as we have been shown, the only federal act which concerns the jurisdiction of courts, original and appellate, extending over these islands. The relevant section of the Act reads as follows:

"Section 2. *Local laws continued; courts; appeals and writs of error.* — Until Congress shall otherwise provide, in so far as compatible with the changed sovereignty and not in conflict with the provisions of this act, the laws regulating elections . . . and the other local laws, in force and effect in said islands on the seventeenth day of January, 1917, shall remain in force and effect in said islands, and the same shall be administered by the civil officials and through the local judicial tribunals established in said islands; . . . and the orders, judgments, and decrees of said judicial tribunals shall be duly enforced. . . . In all cases arising in the said West Indian Islands and now reviewable by the courts of Denmark, writs of error and appeals shall be to the Circuit Court of Appeals for the Third Circuit, and, except as provided in sections two hundred and thirty-nine and two hundred and forty of the Judicial Code, the judgments, orders, and decrees of such court shall be final in all such cases."∎

As the Act of Congress which established Circuit Courts of Appeals provided that they "shall exercise appellate

jurisdiction to review by appeal or by writ of error" final decisions in the District and Circuit Courts of the United States (Act of [Mar. 3] 1891, ch. 517, § 6 [26 Stat. 828] ▇, and as that Act has been construed to preserve the distinction which had long existed in those courts between an appeal in an equity case and a writ of error in a case at law, the appellee urges that there can be no presumption that Congress, in conferring upon this Circuit Court of Appeals appellate jurisdiction over proceedings in the courts of the Virgin Islands, intended to abolish that distinction and change the process prescribed by the Act of its origin, unless its intention so to do is plainly manifested by the language of the Act. Stevens v. Clarke, 62 Fed. 321, 10 C.C.A. 379.

In order to determine what Congress did when it conferred on this court appellate jurisdiction over proceedings in the courts of the Virgin Islands, we may validly inquire what Congress intended to do, having regard, of course, to the subject-matter to which its enactment was addressed. In the first place, its subject-matter was not the District Courts and Circuit Courts of the United States. In these courts the distinction between actions in equity and at law existed and Congress in conferring appellate jurisdiction upon Circuit Courts of Appeals recognized the distinction by prescribing the mode of the exercise of their jurisdiction by appeal and writ of error. Act of 1891 (supra). The subject-matter of the enactment under consideration was the Ordinary or District Court of the Virgin Islands — a local court established under Danish rule, with jurisdiction over controversies of every kind, in which the distinction between actions in equity and at law was neither made nor known. Having this in mind it is plain that Congress intended, for a time at least,

to preserve the local laws of the islands and to provide for their enforcement through the local judicial tribunals as then established. As the courts of Denmark were, under the changed sovereignty, no longer open to appeals from the insular courts of original jurisdiction, Congress also intended to provide in substitution an appellate tribunal in the United States to review the judgments and decrees of those courts. To this end Congress by a few words conferred upon this court appellate jurisdiction, contemplating, doubtless, that this jurisdiction would be invoked by appropriate process and be exercised in a manner consistent with the character of the matters brought before it for review. In conferring jurisdiction Congress did not define the process to be employed or the procedure to be followed, otherwise than by stating that — "in all cases arising in the said West Indian Islands and now reviewable by the courts of Denmark, writs of error and appeals shall be to the Circuit Court of Appeals for the Third Circuit."

In using this expression Congress was chiefly concerned in designating the court to which the process of review should be addressed. It rather assumed that the appellate procedure would be by writs of error and appeals; it did not, however, expressly prescribe that procedure as it did in the act creating Circuit Courts of Appeals, Act of 1891, ch. 517, § 6. But as Congress by the Act of 1917 (supra) did incontestably grant this court jurisdiction to review judgments and decrees of these insular courts, it becomes necessary, in order to determine what form such review shall take in order that it embrace what Congress intended, to inquire into the judicial establishment of these islands and the peculiar judicial proceedings by which cases were there tried and later were reviewed by the appellate court in Denmark.

From the protocol in this case, made and certified by

502

the District Court, as well as from our investigation elsewhere, it appears that in the courts of original jurisdiction in the Virgin Islands, under the continuation of Danish procedure, a cause is begun in what is called the Reconciling Court. To the judge of this court the parties submit their controversy quite informally, and the judge, with equal informality, endeavors to reconcile their differences. In vindication of such informal judicial procedure it is interesting to learn that most of the litigation in these islands is successfully ended in this court. If, however, the judge fails to compose the controversy by process of reconciliation, as happened in this case, the cause is then transferred to the Ordinary or District Court. In this court the same judge sits (always in the presence of two court witnesses, presumably representing the public) and hears the case without a jury. As we gather from the protocol before us, oral evidence is seldom presented. The case is tried on written pleas. These pleas bear no resemblance in name or number to pleadings either at common law or under code practice. They contain a recital of what the parties regard to be the evidence bearing on their respective sides, supplemented by discursive argument. They are filed without verification, and to the admission or rejection of evidence so pleaded, no exceptions are noted.

When the pleadings end, the judge enters the Court's judgment. From this judgment (prior to the change in sovereignty) an "appeal" was "allowed" to the Supreme Court of Denmark. There the whole record was reviewed de novo, without regard to whether the proceeding below was in equity or at law, for, as we are informed, no such distinction existed.

Such, in brief, was the judicial procedure under the Danish law. By continuing this procedure in these islands after the United States had acquired them, and in conferring upon this court appellate jurisdiction in all cases

there arising "and now reviewable by the courts of Denmark," Congress by the cited Act clearly did two things: First, it granted to litigants a right of review of their cases tried in these islands; and, second, it conferred upon this court jurisdiction to review them. In continuing Danish procedure in this newly acquired domain and in granting the right of review of cases tried thereunder, Congress must have intended, until it provided otherwise, to grant such review as had previously existed under Danish rule, and it must have intended also to confer upon this court an appellate jurisdiction which would make review of cases so decided practicable and possible.

If, in granting the right of review to litigants in these islands and in conferring appellate jurisdiction upon this court, Congress used words which, having a technical meaning in jurisdictions of English origin, had no meaning at all in Danish jurisprudence, we cannot hold that Congress intended thereby to impose upon their jurisprudence a legal distinction between proceedings in equity and at law to it unknown, and to change their proceeding of review from that which existed to one grounded on that distinction. In other words, we cannot hold that Congress prescribed an appellate procedure based on a distinction which did not exist. Therefore, until Congress shall provide otherwise, we shall regard the appellate jurisdiction conferred by the recited Act to be such as to enable this court to review on appeal all matters of fact and of law involved in the judgments brought here for review.

As shown by his first plea, the plaintiff brought this suit on a lease to recover from the defendant rent due and in arrear for three years and eight months, amounting to $1,100 (transposing here and hereafter all amounts from francs to dollars). By the same plea the plaintiff admitted an indebtedness to the defendant in an amount

"which cannot exceed $550," leaving as the balance of his claim the sum of $550. While there was much discussion in the pleas concerning a transaction by which the plaintiff maintained and the defendant denied that the lease had been annulled, we lay aside this dispute in view of the plaintiff's acceptance of the defendant's "version" of the transaction and of the fact that the plaintiff has brought this suit on the lease.

It appears from the defendant's pleas that the demised premises, situate on the island of St. John and known as Leinster Bay estate, comprised her ancestral property, and that she sold this estate to J. P. Jorgensen, the plaintiff, for $3,000, the purchase money to be applied to the payment of her debts and the debts of her husband, Henry Clen. Concurrently with this transaction, J. P. Jorgensen demised the purchased premises to Henry Clen, by the lease in suit, at the rent named and for a term limited only by Clen's desire to remain on the premises and his ability to pay the rent, with the stipulation that at his death the lease should pass to Sophia Clen upon the same terms. Henry died and Sophia came into possession, and continued therein without paying rent. Whereupon the plaintiff brought this suit.

To the plaintiff's claim for rent, Sophia filed a counterclaim for $1,950, embracing an item for an unpaid portion of the purchase price of Leinster Bay estate, amounting to $500, and a charge of $1,450 for pasturing the plaintiff's cattle on the estate. Admitting the plaintiff's claim of $1,100 for rent, she prayed judgment in her favor for the difference of about $850. The Court disallowed her counterclaim (except the portion included in the plaintiff's admission of indebtedness) and found her indebted to the plaintiff in an amount exceeding that which the plaintiff himself claimed to be due, but entered judgment (on the plaintiff's admission of indebtedness) for $550. In order

correctly to understand the conflicting demands of the parties, we have found it necessary to make from the many pleadings statements of the opposing claims in the nature of bills of particulars. These we reproduce as follows:

### Plaintiff's Claim

| | |
|---|---:|
| Plaintiff's claim for rent — 3 years and 8 months at $25 a month (not contested by defendant) ........................ | $1,100.00 |
| Plaintiff admitted the validity of defendant's counterclaim, not to exceed ...................................................... | 550.00 |
| Plaintiff claimed and was awarded judgment for a balance of ............................................................................ | $ 550.00 |

With this money judgment, there was a judgment of ouster.

### Defendant's Counterclaim

| | |
|---|---:|
| Balance due on the purchase price of Leinster Bay estate ................................................................................... | $ 500.00 |
| Pasturing 103 head of cattle for 8 months (July, 1916, to March, 1917) at 50 cents per head per month........ | 412.00 |
| Pasturing 107 head of cattle for 9 months (April 1, 1917, to December 31, 1917) at $1 per head per month........ | 963.00 |
| Pasturing 25 calves for 6 months at 50 cents per head per month ..................................................................... | 75.00 |
| | $1,950.00 |
| The defendant admitted rent due and unpaid in the amount of ....................................................................... | 1,100.00 |
| And asked for judgment in her favor for about ............ | $ 850.00 |

Turning to the plaintiff's claim, the item of $1,100 for rent, not being disputed, was properly allowed. But the allowance in full of the item of $550 as a credit against the defendant's charges for pasturage was error. Such a claim by the plaintiff was, in the first place, wholly inconsistent with his original position, that after July, 1916, the defendant, because of annulment of the lease, ceased to be his tenant, and that thereafter he pastured his cattle

on his own land. Yet for some reason (which we think appears in the lease) he continued to make payments to the defendant in sums aggregating $550. But, when the defendant presented her charges for pasturage, the plaintiff changed his position, as shown by the institution of this suit on the lease, whereby it appears that the relation of landlord and tenant between himself and the defendant had either been restored or had never been disturbed.

Such being the relation, what does the lease require of the parties arising out of it?

The sixth paragraph of the lease provides:

"Should the grass pieces, the buildings, and the estate not be kept in proper condition, the lessor can also give one month's notice to the lessee to quit the estate."

The seventh paragraph of the lease reads:

"The lessee has $400 in hand belonging to the lessor for the purpose of building houses, troughs, and cleaning the grass pieces."

While it would seem from the seventh paragraph of the lease that, on entering upon the demise, the defendant had in hand $400 of the plaintiff's money to be expended upon his premises, the pleas show very conclusively that such was not the case, but that the plaintiff from time to time thereafter advanced the defendant small sums for this purpose, aggregating $550, a part of which the defendant spent for repairs, etc. To harmonize paragraphs 6 and 7, we construe paragraph 7 as an obligation of the lessor to advance $400 to be expended upon his property and paragraph 6 as an obligation of the lessee thereafter to expend her own money for its upkeep. The plaintiff lessor more than performed his covenant by advancing $400 plus $150 or $550 in all. The defendant lessee used the $400 thus advanced, but failed thereafter to perform her covenant to pay for the upkeep from her own funds. Whether she used the remain-

ing $150 for this purpose or for some other purpose is immaterial. As the plaintiff paid $150 more than his covenant in the lease required him to pay, and as the defendant did not expend her own money in this amount for this purpose as her covenant required her to do, the plaintiff is entitled to recover the difference between $400 and $550, to be applied as a credit upon the defendant's pasturage charges against him. The trial court erred, therefore, in allowing a credit of $550, instead of $150.

■ With these findings for the plaintiff, we now take up the defendant's counterclaim. The first item is for an unpaid balance of $500 on the purchase price of the estate. The defendant produced no evidence tending to show such a balance due her. Realizing this lack of proof to sustain this item, her counsel urges that the relation between the plaintiff and defendant of counsel and client casts upon the plaintiff the burden of showing that he paid the purchase price of $3,000 in full by showing that he applied the whole of it to the discharge of the debts of the Clens. Ridge v. Healy, 251 Fed. 798, 164 C.C.A. 32. Assuming, without deciding, that the burden was on Jorgensen, we find that he has sustained it. Furthermore, the transaction involving the distribution of the purchase price of the property was open to direct attack by Sophia when the estate of Henry Clen was being settled before the Ordinary Court (a court with jurisdiction similar to that of a surrogate court, orphans' court, or register of wills) and before his estate was finally closed with her consent, by the judgment of that court. As we have not been shown anything in the Danish law to the contrary, we regard that judgment as conclusive and not open to collateral attack in this action. Therefore we find no error of the trial court in disallowing this item.

■ As the plaintiff admits the defendant's tenancy under the lease sued on and also admits placing his cattle

on the demised premises for pasturage, it is evident that he owes the defendant pasturage charges. There is no substantial dispute between them as to the number of cattle placed upon the premises for pasturage or the time they remained there. The dispute relates chiefly to the rates charged.

This dispute, however, does not extend to the rate of 50 cents per head per month for pasturing 103 head of cattle for eight months, amounting to $412. It relates to the rate of $1 per head per month for pasturing 107 head of cattle for nine months, represented by the defendant's claim of $963, and grows out of the action of the defendant in raising the rate from 50 cents to $1 without notice to the plaintiff. The trial judge refused to allow the increased rate on the theory that the plaintiff was entitled to notice of the change. In this we think he erred, because he failed to recognize that the parties had made no express contract, written or oral, with reference to pasturage. The plaintiff simply placed his cattle upon the defendant's premises and there left them to be pastured. The claims for the defendant's pasturage services and expenditures, therefore, arise out of an implied contract. Under a contract of this character, the law holds that the plaintiff impliedly promised to pay the defendant reasonable rates for pasturage, whatever they were and however they changed. If they had fallen, he would have been required to pay only the lesser rate and to pay the same without notice; as they rose, he is required to pay the higher rate, similarly without notice, because the only contract between them was the contract which the law implied. Such a contract did not impose the condition of notice. It called always for the payment of reasonable rates. What were reasonable rates in this case was best evidenced by the going rates, which, when the plaintiff placed his cattle on the defendant's premises,

admittedly were 50 cents per head per month. By evidence equally certain, these rates changed under war conditions and rose in one instance as high as $1 per head per month. There was in this instance, however, a situation which impresses us as carrying this rate above the prevailing rate; but as the plaintiff showed by his own evidence that the rates rose as high as 80 cents per head per month, we think he cannot complain if he is called upon to pay the rate which he proved others paid. The judgment should therefore be modified as to this item.

In denying the defendant's claim for pasturing 25 calves, we think the trial judge committed no error. It was proven that under the custom of the island no pasturage is charged for calves while they run with their mothers, and that this embraces a period of six months after birth. The defendant failed to show that the calves for which she made a charge were pastured within or without this period.

Having reached these conclusions, we direct that the money judgment be affirmed, when modified pursuant to the following statement:

### Amount Due Plaintiff by Defendant

| | | |
|---|---:|---:|
| Plaintiff's claim for 3 years and 8 months rent at $25 a month | $1,100.00 | |
| Difference between the sum of $400 plaintiff was required to advance the defendant for upkeep of demised premises and the sum he actually advanced ($550) | 150.00 | |
| | | $1,250.00 |

### Amount Due Defendant by Plaintiff

| | | |
|---|---:|---:|
| Balance due on purchase price of Leinster Bay estate | $ 000.00 | |
| Pasturing 103 head of cattle for 8 months at 50 cents per head per month | 412.00 | |

Pasturing 107 head of cattle for 9 months at
  80 cents per head per month ........................... 770.40
Pasturing 25 calves for 6 months at 50 cents
  per head per month ..................................... 000.00
                                           ——————— 1,182.40

Judgment for the plaintiff for balance ............ $ 67.60
— with interest thereon at 6 per cent. per annum from the 3d
day of June, 1918.

■ Embodied in the money judgment for rent in arrear
is a mandate of the court, addressed to the defendant,
that "she shall within a month after this judgment has
been served upon her relinquish possession of the Estate
Leinster Bay." This is in effect a judgment of ouster,
which to be valid must be based upon the lease. The
lease provides:

"Paragraph 5. In case the rent should not be paid during six
months, the lessor can give one month's notice to the lessee to
vacate the estate."

The plain meaning of this provision is that before the
lessee can be dispossessed she must have been in arrear in
rent for a period of six months and after that period
she must have been given one month's notice to vacate.
The protocol contains no evidence of such notice, or, in-
deed, of notice of any kind, except such as may be in-
ferred from the institution of the suit. But notice by
institution of suit is not the notice named in the lease.
Until notice is given in the manner and time agreed
upon by the parties when they entered into the lease
no action to dispossess the lessee can be maintained. As
such notice was not given, the trial judge fell into an
error of law in commanding the defendant to vacate the
premises. This part of the judgment is therefore reversed.

The costs of the judgment below, as modified in accord-
ance with this opinion, shall be taxed in a manner con-
sistent with the practice of the trial court. The costs

511

of this appeal shall be borne equally by the appellant and appellee.