## SUGAR PRODUCTS COMPANY
v.
### ST. THOMAS SHIP BROKERS' ASSOCIATION.
### THE EDGEWOOD

No. 2702

Circuit Court of Appeals

Third Circuit

April 4, 1922

*See, also, 280 Fed. 821*

BARRY, WAINWRIGHT, THACHER & SYMMERS, New York City (DALLAS S. TOWNSEND and JAMES K. SYMMERS, both of New York City, of counsel), *for appellant*

PURRINGTON & McCONNELL, New York City (FRANK J. McCONNELL and WILLIAM A. PURRINGTON, both of New York City, and DENZIL NOLL, JOHN L. CURRY and A. E. STAKEMAN, all of St. Croix, Virgin Islands, of counsel), *for appellee.*

Before BUFFINGTON, WOOLLEY, and DAVIS, *Circuit Judges*

WOOLLEY, *Circuit Judge*

This is an appeal in another case in admiralty against the schooner Edgewood, prosecuted through courts of the Virgin Islands under Danish law. The origin of the case and the main features of its procedure are given in the opinion of this court in Sugar Products Co. v. A. H. Lockhart, just decided, 1 V.I. 548, 279 Fed. 348. There are differences in the two cases as tried below, but the main difference in the appeals is with respect to the appellate jurisdiction of this court. While the former appeal was taken from action of the court which was not final, the instant appeal was taken from a judgment which is, without doubt, final. This appeal, therefore, stands clear of any question of jurisdiction.

The schooner Edgewood, bound from Barbados to New York with a cargo of 210,000 gallons of molasses, put into the port of St. Thomas in distress. The St. Thomas Ship Brokers' Association, a company or firm of two members, gave her assistance. Failing reimbursement, the Association filed in the Sheriff Court of St. Thomas and St.

John a praecipe showing a claim for $16,904.79, local currency, for disbursements made; alleging that they had been necessary to preserve the schooner and protect her cargo; and praying for an attachment against the schooner "and her cargo." Attachment followed.

These proceedings, as in the other case, were then transferred by exemplified copy to the District Court of St. Thomas and St. John. From this court there issued a summons to the captain of the schooner to appear on a named day "to hear demands for the confirmation" of the attachment previously issued and also "to hear judgment for the payment of the aforesaid claim held by the said St. Thomas Ship Brokers' Association against the said schooner Edgewood and her cargo and owners originating for disbursements made to the said vessel" for the amount named. Following the summons, the plaintiffs filed an itemized statement of their claim and a plea requesting that the proceedings before the Sheriff Court be confirmed. On the return of the summons, the District Court considered the plaintiffs' evidence, which so far as the record discloses consisted merely of a bill of particulars showing disbursements, supported by the captain's admission that the same were correct "as far as he saw."

The process, when analyzed, appears to be in the nature of foreign attachment based on the absence from the country of the owners of the attached property, supplemented by a proceeding peculiar to Danish law providing for a summons to the person in possession of the property attached. It may be said just here in answer to a point made by the appellant, that, while the captain of the schooner admitted the indebtedness, we do not understand that the court based its decision on his admission as binding the owner of the cargo, but rather on the plaintiffs' proofs of the indebtedness and the right which the Danish law gave them to proceed against property

of an absent owner in the manner peculiar to foreign attachment.

■ The District Court entered judgment for the plaintiffs, doing several things: First, it confirmed the writ of attachment; second, after reducing the amount of counsel fees, it awarded the plaintiffs frcs. 78,759.50; and, third, it found that unless the same were paid within three days after notice to the captain the plaintiffs were "entitled to execution against the said British Schooner Edgewood of Montreal, her appurtenances and freight and against her cargo, as far as necessary to satisfy" the same. This we regard to be a final judgment, entered in due course of local law, which — the action being quasi in rem — is quite "compatible with the changed sovereignty." See Sugar Products Co. v. A. H. Lockhart (C.C.A.3d 1922) 1 V.I. 548, 279 Fed. 348.

■ The plaintiffs then returned to the Sheriff Court where, presenting a copy of the judgment of the District Court, they requested execution against the schooner, "her hull and all standing and running gear and her cargo." Execution then issued against the schooner, "her hull and all standing and running gear and also in 110,-000 gallons of her cargo." It should be noted that the execution did not run against her "freight." As payment was not forthcoming, the plaintiffs then went into the Auction Court of St. Thomas and St. John and proceeded to have the schooner and "part of her cargo" appraised and advertised for sale. At this juncture the Sugar Products Company, owner of the cargo, appeared and gave bond for the purpose of taking this appeal, with the effect of releasing the cargo from the attachment. Without attacking the judgment in the District Court, as the plaintiffs claim it might have done under Danish law, Sugar Products Company took this appeal on the record made in the District Court, and now (this appeal being in admiralty) asks us, quite correctly, to try the case de novo.

The Ariadne, 13 Wall. 475, 479, 20 L. Ed. 542; Reid v. American Express Co., 241 U.S. 544, 548, 36 S. Ct. 712, 60 L. Ed. 1156; Duche & Sons v. The John Twohy, 255 U.S. 77, 41 S. Ct. 251, 65 L. Ed. 511; Clen v. Jorgensen (C.C.A.3d 1920) 1 V.I. 497, 265 Fed. 120.

██ ██ What questions does the record raise for trial? The answer may be made by determining what questions are not raised for trial. Upon the case as made, we are not required to decide whether under Danish law a debt due by the cargo to the schooner for demurrage can be recovered only by the owner of the schooner or may be reached by an execution creditor. On a like question affecting freight due by the cargo to the ship, we say, without deciding, the appellant has not satisfied us that the local law is different from that under which the District Court included "freight" in its judgment. The reason these questions do not call for decision is, they are not raised on this appeal. The judgment of the court, confirming the attachment, awarded execution against the schooner "her appurtenances and freight and against her cargo" and the execution which later issued was against the schooner, her hull and gear "and also in 110,000 gallons of her cargo." The basis of this judgment and execution was "disbursements incurred as necessary expenses to maintain the vessel and protect her cargo." Obviously, the plaintiffs in this suit neither asked for nor were they awarded judgment against the cargo for demurrage due the schooner. Though awarded judgment against the "freight," the plaintiffs did not request execution against the freight but, pursuant to the terms of their request, had execution only against the schooner and "110,000 gallons of her cargo." The case as made on appeal, therefore, resolves itself into issues of fact as to the proper allowance of the many items in the plaintiffs' bill of particulars of disbursements. These stand or fall, in the dearth of supporting evidence, according as the items are

561

such as, within principles of maritime law, can be asserted against cargo as distinguished from their assertion against the schooner. This is made the more difficult because of the paucity of evidence showing the date of the separation of cargo and ship and the termination of the venture. It should here be noted that we are dealing only with the items composing the money award of the judgment which have to do with the liability of the cargo for their payment, not with the liability of the schooner. Keeping in mind that the disbursements for the "cargo" for which it is liable in maritime law are, on the record, only those made for its discharge and protection, as represented by the plaintiffs in their claim and plea and as forming the basis of the court's judgment in confirming the attachment and awarding execution, we shall, without discussing them, dispose of the items one at a time, resolving all questions of doubt in favor of the judgment.

Applying a maritime test to each item, the following are disallowed as claims against the cargo:

| | |
|---|---:|
| Sundry cables to owners in Montréal | $ 228.98 |
| Cable to St. Johns, New Brunswick | 4.40 |
| Sundry automobile hire, cab hire, labor, messenger, etc. | 40.40 |
| Surveys on schooner as per receipt on surveys | 104.64 |
| Sundry ship's laundry | 23.40 |
| E. L. Simmons for survey on hatches of vessel | 17.44 |
| Bill Public Health Service for medical attendance | 93.47 |
| Sundry amounts paid out for repairs, motors, etc. | 136.43 |
| Bill Grand Hotel for meals supplied Capt. Richter | 153.69 |
| Bill Sailors' Home for feeding crew | 28.61 |
| Bill Royal Mail St. Thomas Dock Co. for repairs, etc. | 152.26 |
| Wages for Capt. Richter | 1,500.00 |
| Lawyers' fees for legal advice and detention on case | 1,500.00 |
| 5% commission on disbursements ($14,671.23 local currency) | 733.56 |
| Agency fee attending to vessel's business | 1,500.00 |
| Total | $6,217.28 |

The amount of $6,217.28, local currency, must, therefore, be deducted from the total award of the judgment, leaving only the balance thereof with interest thereon to be asserted against the bond now standing in lieu of the lien.

The judgment of the District Court is reversed in part and affirmed in part and the case is remanded to the District Court for modification of its judgment in conformity with this opinion; the costs of this appeal to be divided is equally between the parties.