(44 South. 115.)

No. 16,453.

DOWDEN v. DOWDEN.

(June 10, 1907.)

1. DIVORCE—ABANDONMENT—EVIDENCE.

Repeated abandonments of the wife by the husband, coupled with defamation and insulting letters, are sufficient grounds for separation from bed and board.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Divorce, §§ 62, 77, 83, 68.]

2. SAME—EVIDENCE—LETTERS.

Letters by the husband to the wife are admissible, if for nothing else, at least to prove what their contents are.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by Minnie Dowden against A. C. Dowden. Judgment for plaintiff, and defendant appeals. Affirmed.

Lewell Colbert Butler and Alexander & Wilkinson, for appellant. Herndon & Herndon, for appellee.

PROVOSTY, J. Plaintiff sues her husband for separation from bed and board.

The grounds are cruel treatment, such as renders their further living together insupportable, defamation, and abandonment.

The parties were married in December, 1899, in Shreveport. The five years following their marriage they lived in Little Rock, and then came to live at the boarding house of plaintiff's mother in Shreveport. They have one child, a girl, five years of age at the time of the filing of this suit in June, 1906. Defendant is an employé in the railroadshops in Shreveport. On the 24th of December, 1904, because of his displeasure at his relatives not being remembered in the decoration of a Christmas tree, he left at midnight, taking his trunk along, intending the separation from his wife to be permanent. He returned to her, however, within a few days, and they again lived together. On the 1st of May, 1905, he again left her with the fixed and avowed intention that the separation should be permanent. On the 26th of May he wrote to her the following letter:

"Shops Station May 26th, 1905.

Mrs. Dowden: I called you over the phone this a. m. to inquire if you had received the $20.00 that I had mailed you on the 24th inst.

"Now that you treated me with such —— contempt, I ask for the return of same."

Whether the letter here referred to as having contained $20 was ever received by plaintiff, the record does not show. In June, 1905, plaintiff went to St. Louis to help her sister nurse the latter's husband, who was dying of consumption. While she was in St. Louis defendant wrote her the following letter:

"Shops Station July 25, 1905.

"Mrs. Dowden: I have repeatedly written you and no satisfaction. Now I want you to distinctly understand that, while you will not peacefully and willingly consent to a divorce without trouble, I propose to force you regardless of results. Emphatically I have grown to dispise you. You have played your cards, now I play mine. You and that long tongue pug nose sister have talked about me, while I have never uttered one unkind word about you or any of your people. What have you derived from it? Nothing but made fools of yourself. Patience has ceased to be a virtue.

"Now madam, my time has come, if you don't willingly consent to a peaceful divorce, so help me God I will have you indicted before the grand jury at Little Rock for the willful murder of your second child. Now, woman defy me if you dare. All I care for is to cut loose from you. Then you can go and do as you please. You can have the child, for all I want is a divorce.

"I do not propose to live such a damnable life and to live with you would be such. Woman I

dispise you, and will down you if it is the last act of my life.

"Jimmie's death was no surprise, though he while living had my sympathy.

"Now, if I don't hear from you in a reasonable length of time, you will have to bear the consequences, for I will not live in such a manner.

"A. C. Dowden."

On October 9, 1905, she being still in St. Louis, he brought a suit against her for separation from bed and board, alleging, as follows:

"Petitioner avers that he has always been a kind faithful and dutiful husband, discharging all his duties towards his said wife and child, providing them with all the comforts of life and home, but that, notwithstanding his kind and proper treatment of his said wife, represents that his said wife has voluntarily abandoned the matrimonial domicile and refuses without any cause whatever to return thereto, that she so abandoned him more than six months ago, and that she does not intend to return, but is now living with her said child in the city of St. Louis, Mo., in a disreputable portion of the city, and in the same house or in immediate proximity to a saloon and house of questionable repute, where degraded and immoral people frequent and go, and that said child is being constantly being brought in contact with people of immoral character, and by association with such classes of people its morals are in imminent danger of being degraded and debased, and that such child being of tender years, and being subject to such contaminating influences, should not be intrusted to her said mother, but that petitioner is entitled to the custody and possession of said child, for the above reasons and for the further reason that petitioner is much more able to care for and educate the said child than his said wife is. Petitioner represents that a curator ad hoc should be appointed to represent the absent defendant."

The day after this petition was filed the Shreveport Journal published an article stating that the petition alleged that plaintiff was "now living in a house of questionable repute in St. Louis."

Friends of plaintiff called upon the defendant in regard to the matter, and he promised to go to the paper and have a correction published, and the next morning there appeared in another newspaper "a small paragraph stating that Mrs. Dowden was visiting her sister in St. Louis," and in the Shreveport Journal the following:

"Dowden Divorce Suit.

"By request the Journal quotes exact words of petition. In its mention of the suit for divorce filed yesterday by Attorney L. C. Butler for A. C. Dowden against Mrs. Minnie Dowden the Journal stated that the petition filed by Dowden charged that Mrs. Dowden was 'now living in a house of questionable repute' in the city of St. Louis. Friends of Mrs. Dowden in this city indignantly deny that truth of the charge and at their request the Journal gives below the exact words of the petition as filed, from which it will be seen that a slight error was made in these columns.

"After charging that Mrs. Dowden had abandoned her husband for a period of six months and had no intention of returning the petitioner added, 'But is now living with the said child in the City of St. Louis, Mo., in a disreputable portion of the city, and in the same house, or in immediate proximity to a saloon and house of questionable repute, where degraded and immoral people frequent and go, and that said child is constantly being brought in contact with people of immoral character and by association with such classes of people its morals are in imminent danger of being degraded and debased, and that such child being of tender years and being subjected to such contaminating influences should not be intrusted to the said mother.'

"Friends of the defendant in this suit deny most emphatically for her all of the allegations made by the plaintiff. Mrs. Dowden was formerly Miss Minnie Wehke of this city and was married in December, 1899."

The same friends of plaintiff called again upon defendant, and asked him to correct by an affidavit the defamatory impression which the allegations of the petition had the effect of creating, and defendant's answer was that he would have to consult his lawyer. The lawyer, Mr. Butler, was unwilling that any explanation of the charges should be given, unless the wife would consent to let his client get the judgment for separation from bed and board he was asking for.

The case was tried and the husband's suit was dismissed. Plaintiff then brought the present suit. The learned judge gave her judgment.

We agree with him that no self-respecting wife should be compelled to live with a man who could write her such a letter as that transcribed above, and falsely make concerning her the allegations contained in the petition transcribed above, and, more especially,

who could refuse to correct defamatory inferences drawn from such allegations after the newspapers had spread such inferences broadcast in the community.

The learned counsel say that the letters of the spouses to each other are not evidence. They may not be evidence to prove the verity of their contents, because husband and wife cannot be witnesses for or against each other; but a letter is the very best evidence of the fact that it contains certain recitals, and this is all that the said letter has been offered for in this case. The fact that the letter was written by the husband, and the further fact that it was not written for the purpose of being used as evidence in this case, but represents the true and real sentiments which animated the writer, all this is proved by the other evidence in the case. The wife is shown to have received the letter, and the letter is offered for the sole purpose of showing that it contained certain expressions. These expressions are verbal acts on the part of the husband, and may be proved just as a blow or any other cruel treatment on his part might be proved. The question is not as to whether what is said in the letter is true (to prove which the letter might be inadmissible), but whether the letter just as it stands was written to the wife by the husband. See Hill v. Hill, 112 La. Ann. 770, 36 South. 678.

Judgment affirmed.