(58 South. 149.)

No. 18,634.

MATHEWS v. GUILLAUNE.

(March 11, 1912. Rehearing Denied April 8, 1912.)

(Syllabus by Editorial Staff.)

1. DIVORCE (§ 129*)—SUFFICIENCY OF EVIDENCE—ADULTERY.

Evidence, in an action for divorce on the ground of adultery, held sufficient to sustain a judgment for plaintiff.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 411–441, 454; Dec. Dig. § 129.*]

2. DIVORCE (§ 115*)—EVIDENCE — ADULTERY—LETTER TO CO-RESPONDENT.

In an action for divorce on the ground of the wife's alleged adultery, a letter of the wife to the party with whom it was charged that adultery had been committed was admissible for the sole purpose of proving the fact that the letter was written by defendant, in order to show that the person who would write such a letter was not the pure-minded young woman that the defense claimed defendant was.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 371–378; Dec. Dig. § 115.*]

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Charles A. O'Neil, Judge.

Action for divorce by John M. Mathews against Maimie Guillaune. Judgment for plaintiff, and defendant appeals. Affirmed.

Allen & Pecot, for appellant. Borah & Himel, for appellee.

PROVOSTY, J. The parties to this suit are colored people. The father of defendant, suspecting her to be pregnant, took her to a physician, and ascertained that such was the case. He then pressed her to know the man who was responsible for her condition, and, she having named plaintiff, he and his sons, more or less by intimidation, induced plaintiff to marry her. They did not insist, however, upon his living with her, and he did not, but left her at her father's house. About a month later, June 9, 1910, this suit was brought for nullity of marriage, and, in the alternative, for divorce on the ground of adultery. The suit in nullity is now abandoned. The adultery is alleged to have taken place with one Hamilton on June 4, 1910, five days before the filing of the suit.

[1] Hamilton testified that, on being twitted by his friend, Abe Williams, upon having lost his girl by her marriage to Mathews, he told him that the best way for him to be persuaded to the contrary was to get into the buggy with him, as he was on his way to meet the girl clandestinely; that

Williams consented, and that Alex Bowen went along too; that when they reached the yard gate of defendant's father's house he got out of the buggy and went to where defendant was waiting for him, "outside of the yard gate in the pasture near the barn," and there met her and committed the adultery with her; that Williams got out of the buggy at the same time that he did, but that Bowen remained in the buggy.

Williams corroborated this testimony. He testified that it was he who suggested that Bowen be taken along; that he went to Bowen's house and asked him to come along, and assigned as a pretext that he wanted to talk baseball matters with him, and that Bowen was not informed of the real object of their mission until shortly before reaching the defendant's father's place; that he (Williams) got out of the buggy, and, after a few minutes, followed Hamilton, and saw two persons lying on the ground, and presently heard some one in the house call the defendant; and that when defendant opened the door to enter the house the light fell on her, and he recognized her.

Bowen corroborated them up to the point of the two others having entered the yard, and he having remained in the buggy. Asked whether he would have gone if he had known what their real mission was, he answered he did not know.

Hamilton's reputation for veracity is shown to be bad. Several witnesses, colored, testified that they would not believe him under oath, and, to some extent, William's reputation also is impeached; but no attempt is made to impeach Bowen, and, except on the theory of a conspiracy to create evidence, and we have no good reason for supposing such a thing to be, we do not see how the story thus told is to be disbelieved, especially that the trial judge believed it and gave plaintiff judgment.

[2] A letter of defendant's to Hamilton, in which she speaks of her criminal relations with him and of the injustice done by her to Mathews, was admitted in evidence. The learned trial judge says that he admitted the letter, not for the purpose of proving the facts stated therein, but for the sole and restricted purpose of proving the fact itself of the letter having been written by the defendant, in order thereby to show that the person who would write such a letter was not the pure-minded and unsophisticated young woman that the defense would make defendant out to be; and that in thus ruling he based himself upon the decision of this court in the case of Dowden v. Dowden, 119 La. 326, 44 South. 115.

The learned counsel for the defendant criticise that ruling, as well as the decision upon which it is founded. They say:

"How can a court separate the fact from the truth of the fact? The human mind does not work that way, because the whole effort of the mind is to find and arrive at the truth of things. The two cannot, by a mere fiction, be rent and separated."

For our part, we experience no difficulty in separating the fact of a certain letter having been written from the verity or falsity of the statements therein contained. If a young woman writes a foul letter, the fact of her having done so is an independent fact of itself, provable like any other fact. The verity of the statements contained in the letter is another thing. One may be convinced that every statement in a letter is false, and at the same time be convinced from the fact of the letter having been written that the writer is an infamous person. The distinction here made is elaborated in Wigmore on Evid. §§ 1768, 1715, and need not be dwelt upon any further here. Of course, all such evidence must be received with caution; it must be beyond even the suspicion of connivance or fraud; the court must be entirely and perfectly satisfied that the letter has not been written for the pur-

pose of being used as evidence. In the present case, all idea of such connivance is absolutely excluded; and so it was in the Dowden Case. The letters in that case were in themselves cruelties, and their being such was in no way, shape, or form affected by the truth or untruth of the statements therein contained. The statute which forbids the reception in evidence, in cases of this kind of the statements or declarations made by husband or wife has no wider operation than to preclude the use of such statements or declarations to prove the truth of the assertions therein contained. Any other interpretation of said statute would exclude all evidence of oral cruelty and all evidence of defamation—a thing obviously not intended by said statute.

Judgment affirmed.