114 P.2d 91

**POTEET v. POTEET.**

No. 4602.

Supreme Court of New Mexico.

May 24, 1941.

Petition for Rehearing Dismissed June 24, 1941.

Laker J. Frazier and Leland M. Quantius, both of Roswell, for appellant.

G. T. Watts, of Roswell, for appellee.

BICKLEY, Justice.

Plaintiff (appellee) sued for divorce, alleging that he and defendant (appellant) had lived together as husband and wife twenty years. That the temperaments of

plaintiff and defendant are so adverse, and there exists such a complete incompatible relation between them that they cannot longer live together in peace and harmony, and that, as a result thereof, they had separated and continued to live separate and apart from each other. There are no unmarried minor children of plaintiff and defendant. The complaint alleges that plaintiff and defendant own certain real estate, to which plaintiff disclaims any interest. Plaintiff prayed a decree of absolute divorce. The defendant answered, denying the incompatibility, and stated that plaintiff abandoned her without cause. The answer also contains the following allegation: "That there is no reason why the parties hereto cannot live together harmoniously as husband and wife if the Plaintiff will refrain from associating with other women and be contented with his home life." The answer does not charge adultery by plaintiff. The appellant doubtless refers to these allegations in her brief as allegations of recrimination.

The court heard the evidence of plaintiff and defendant, whereupon the defendant requested findings of fact, among which were that the parties had lived together for about twenty years with only the ordinary differences between husband and wife, and that the evidence did not disclose any incompatibility between the parties; that plaintiff abandoned defendant without just cause and has not supported her according to his means and ability; that the defendant has had a number of operations, and at the time of the trial was in ill health;

that the defendant is the owner of the real estate mentioned in the complaint; that a reasonable sum for her support would be the sum of $40 per month; and that a reasonable sum for attorney's fees would be $75 for services in the district court. Requested conclusions of law were that the plaintiff is not entitled to a divorce, and that the plaintiff should be required to pay the defendant $40 per month and $75 as attorney's fees in the district court.

The record does not disclose any formal specific ruling on defendant's requested findings of fact and conclusions of law, but that the court considered the same, sustaining part and overruling part, is apparent from the final decree, which contains a reference to said requested findings and conclusions.

In the decree the court found that the temperaments of plaintiff and defendant are so adverse that there exists a complete incompatible relation between them and that they cannot live together in peace and harmony; that there are no unmarried minor children of plaintiff and defendant; that the defendant is entitled to receive as her sole and separate estate the real estate described in plaintiff's complaint, and that there is no other community property except an automobile which plaintiff is entitled to receive, and that the plaintiff should contribute the sum of $40 per month to the support of the defendant and should pay all costs of the action, including an attorney's fee to defendant's attorney in the sum of $75.

The decree effectuates these findings and conclusions by adjudging that plaintiff have and recover an absolute divorce from the defendant, and awards to defendant the affirmative relief she prayed. At the conclusion of the trial, the court announced his opinion as follows: "It is unfortunate when two people cannot make a go of their married life. If one party is unwilling to continue the relation there isn't any power on earth—court, or anywhere else—to make it a go. I do not see what is to be gained by keeping them married to one another."

Viewing it as a sociological observation, we are disposed to think that the trial judge is right. The vital thing to discover is the intention of the legislature in declaring the public policy of the state with respect to divorce.

Appellant seems to advocate the view that divorces should only be granted on the application of the party "injured". Also, appellant contends for a very strict sociological view, and argues that the attainment of divorce should be very difficult.

In Columbia Law Review, Vol. 20 (1920), page 472, we find the statement: "Native genius and idiosyncrasy have made the law of divorce in the United States a subject of competitive jurisprudence. From South Carolina, which constitutionally prohibits absolute divorce, and New York, which admits adultery as the only ground, to Washington, which grants a divorce for any ground deemed sufficient by the court, the states find thirty-six statutory causes for divorce,—the whole gamut of moral wrong and legal incapacity."

Undoubtedly in some jurisdictions the application for divorce can be maintained only by the injured party, because of the "fault" of the defendant.

Without doubt, also, it would be an easy solution of the divorce problem to adopt the sacramental view of marriage and permit no divorce at all. In this state, however, that view has not been adopted. Ever since 1862 marriage has been contemplated by the law in New Mexico as a "civil contract". Laws 1862–63, p. 64. Between the one extreme of no divorce at all and the other extreme of divorce by mutual consent, which in varying degrees was permitted among the Jews in Biblical times, and among the Romans, and in Belgium, China, Japan, Norway, Portugal, Rumania, and Russia, and which has been advocated by More, Milton, Selden, Lecky, Montesquieu, Bentham, and Mill, the states have taken their stand. See Columbia Law Review, supra, citing authorities.

It will be interesting and helpful to trace the evolution of legislative thought on divorce in New Mexico.

By the acts of 1872, Laws 1871–72, p. 28, the courts had jurisdiction only to adjudge or decree a divorce in cases of adultery, cruel or inhuman treatment and abandonment. At that time the idea of fault of one party and injury to the other was preserved. In 1887, Laws 1887, c. 33, the legislature added the grounds of habitual drunkenness

on the part of the husband or wife, and neglect upon the part of the husband to support the wife. These new grounds seem to preserve the idea of injury, but do not necessarily imply a criminal fault because habitual drunkenness has been characterized by many as a disease, and the neglect on the part of the husband to support the wife might flow from inability. Up to that time and until 1901, the idea seemed to be injury to one party through the conscious fault of the other. In 1901, Laws 1901, c. 62, § 22, there was added as further grounds, "impotency", and, "when the wife, at the time of the marriage, was pregnant by another than her husband—said husband having been ignorant thereof;" and "the conviction for a felony, and imprisonment therefor, in the penitentiary, subsequent to the marriage." Impotency is an incapacity which may result from physiological conditions not necessarily the fault of one so afflicted. The conviction of a felony might not be for a crime necessarily involving moral turpitude, and surely not of necessity connected with the other spouse in any way. Apparently, conviction of a felony subsequent to the marriage not followed by "imprisonment therefor" in the penitentiary would not in itself be a ground for divorce. It is interesting to speculate whether this does not reflect an early legislative thought that the enforced absence of one of the spouses from bed and board due to incarceration in the penitentiary might not operate harmfully to society and the morals of the other spouse. Likewise, if pregnancy at the time of marriage by another man embraces pregnancy by a former husband during coverture, we would have an instance where the ground of divorce does not so much as suggest an implication of guilt in the wife.

In the same act (Sec. 23, Chap. 62, L. 1901), there was introduced a new element. It was provided: "Whenever the husband and wife shall have permanently separated and no longer live or cohabit together, as husband and wife, either may institute suit in the district court for a division of property, or for the disposition of the children, without asking for or obtaining in said suit a dissolution of the bonds of matrimony; or the wife may institute suit for alimony alone." See Sec. 68-502, N.M.S.A. 1929.

Was it to supplement these provisions that "incompatibility" was later made a ground for divorce?

In Keezer on Marriage and Divorce, at Sec. 64, it is said:

"Legal separations are expressly prohibited in most states, and in others are unknown. It has been a disputed question whether they serve any useful purpose. The weight of argument and authority is against them. To be sure, they may possibly secure a judicial settlement of matrimonial troubles and give an innocent wife protection from a cruel or drunken husband; but the same result could be obtained by divorce, alimony, and a restraining order or injunction, and leave the parties in a much better position for themselves and the community.

"A legal separation deprives the parties to the marriage of the rights of cohabitation, and the procreation of legitimate children. As Mr. Justice Swift says, 'it places them in a situation where there is an irresistible temptation to the commission of adultery, unless they possess more frigidity, or more virtue than generally falls to the share of human beings.' Mr. Bishop says, 'it is destitute of justice and one of the most corrupting devices ever imposed by serious natures on blindness and credulity. It was tolerated only because men believed as a part of their religion that dissolution would be an offense against God, whence the slope was easy towards any compromise with good sense, and as the fruits of compromise we have this ill-begotten monster. It not only punishes the guilty party but it punishes the innocent party as well and should be done away with on the ground that it is against public policy.'

"In South Carolina this is the only kind of a separation granted."

At Sec. 63 of his work, Keezer says:

"A partial divorce does not dissolve the marriage tie. It is a mere legal separation, a divorce from bed and board only, simply freeing the innocent party from the presence and control of the guilty one until they agree to renew cohabitation. And if the innocent party is the wife, the court will ordinarily give her a suitable allowance from the income and estate of her husband.

"Kent says these qualified divorces are regarded as rather hazardous to the morals of the parties. The English courts have said it is throwing the parties back upon society in the undefined and dangerous characters of a husband without a wife, and a wife without a husband."

There are two kinds of divorces, a divorce a mensa et thoro, defined by Bouvier's Law Dict., Baldwin's Century Ed., p. 314, as: "A divorce from table and bed, or from bed and board. A partial or qualified divorce, by which the parties are separated and forbidden to live or cohabit together, without affecting the marriage itself." And divorce a vinculo matrimonii, which Bouvier's Law Dict., Baldwin's Century Ed., p. 314, defines as: "A divorce from the bond of marriage. A total divorce of husband and wife, dissolving the marriage tie, and releasing the parties wholly from their matrimonial obligations." The latter kind of divorce, being the only one recognized in New Mexico, probably gave rise to the last quoted legislative enactment in 1901, providing a sort of substitute for divorce from bed and board, which could be accomplished by the agreement and conduct of the parties when they mutually determine that they can not appropriately continue to live and cohabit together and *permanently* separate. The status of permanency of the separation is apparently the underlying fact which gives the court jurisdiction to adjudge a division of the property and disposition of the children and to make an award of alimony to the wife when divorce is not applied for. It

is the fact of permanent separation, independent of injury and fault (since none are mentioned in the statute), which is the basis of the court's jurisdiction to award, the relief mentioned. Thus the matter stood until the legislature of 1933. By Chap. 54 of the Session Laws of that Session, there was added a new ground for divorce, namely, "incompatibility". We would not be surprised if observers between 1901 and 1933 became impressed with the views of Chancellor Kent, Mr. Justice Swift and Mr. Bishop, expressed in the above quotation from Mr. Keezer's work on divorce, and others, that legal separations and qualified divorce from bed and board alone were a delusion and a snare, and contrary to the interests of the public and the parties, and that the divorce laws required modification, because all the vices said to inhere in divorces from bed and board merely, would attend permanent separations.

Such a modification was accomplished by the amendment contained in Chap. 54, Laws 1933, adding incompatibility as a ground for divorce. A few expressions from the law writers will demonstrate that the idea embodied in this new ground for divorce is not out of line with modern thought. The Columbia Law Review article cited supra says: "A course more consonant with the mores of the times and the needs of society would be to permit divorce where the marriage end has been frustrated whether by moral or criminal offense or incapacity." Nelson on Divorce and Separation, at Sec. 289, says: "Unconquerable antagonism and incompatibility of temper are not forms of cruelty. Either might properly be a cause for divorce. But where the statutes do not permit divorces for these causes, they are not included in the term 'cruelty.' But the antagonism or the incompatibility may be of such degree as to threaten serious injury, and then a divorce should be rendered on the ground of cruelty. Courts often comment upon the folly of refusing divorce to parties where they are irreconcilable and so alienated that a reunion will not take place, and the denial of divorce will cast them upon the world, in the dangerous position of husbandless wives, and wifeless husbands; and if the court had the discretionary power that courts of equity have in regard to other matters relating to kindred rights, it would be proper to grant a divorce. But in the absence of statutory permission, a divorce will not be granted because the parties are unable to live together." In Schouler on Marriage, Divorce, Separation and Domestic Relations, Sixth Ed., Sec. 1578, it is said: "A divorce for cruelty will not be granted to a couple merely because they are unsuited to each other, but conduct destroying the possibility of living together as husband and wife may be a ground for divorce." Citing illustrations as follows: "Olberding v. Gohres, 107 La. 715, 31 So. 1028 (outrages though no force used); Dowden v. Dowden, 119 La. 325, 44 So. 115 (repeated abandonment and defamation); Slaughter v. Slaughter, 106 Mo.App. 104, 80 S.W. 3

(continual abuse); Walker v. Walker, 38 R. I. 362, 95 A. 925 (improper relations with another though not adulterous)." Again, at Sec. 1667, it is said: "Incompatibility of temper and evidence that a couple can no longer live together harmoniously is no ground for divorce, *except in some States,* where the cause of inability to live together is not the fault of the plaintiff." (Emphasis supplied)

Clyburn v. Clyburn, 1927, 175 Ark. 330, 299 S.W. 38, 39, is an interesting case. In an action for maintenance and support brought by the wife on the ground of desertion, where petition was dismissed and the husband was granted a separation from bed and board on his cross bill for absolute divorce, though his allegations of cruelty and indignities were not proved. The parties had been married for about thirty years, and had had three children, the eldest of whom could not agree with his father, and fought with him constantly. The latter, after several unsuccessful attempts to live with his wife peaceably, left the marital home forever. On his appeal from the decree granting the lesser relief, held, for the husband, the court saying that the lower court had correctly found that the appellant was entitled to a divorce, but erred in granting him a divorce from bed and board only, instead of an absolute one. It is not disclosed that incompatibility was a statutory ground for divorce in Arkansas, but the court held that a showing that the parties could not possibly live together after a long and honest effort to do so is a proper ground for an absolute divorce. A writer in Columbia Law Review, Vol. 28 (1928), page 505, somewhat critical of this decision, says: "As a formalistic matter it is difficult to justify the decision since the jurisdiction has no more than the usual statutory grounds for divorce, and equity jurisdiction of divorce actions being purely statutory, equity can exercise no 'inherent powers' over the matrimonial bond." This writer goes on to say, however: "Nevertheless, a wise public policy, veering away from the notion of divorce as a private criminal remedy to a theory which recognizes the problem as essentially a sociological one, could do no better than to divorce persons so situated as those in the instant case."

In Haller v. Haller, 1928, 149 Wash. 277, 270 P. 822, the facts turned upon incompatibility or the inability of the parties to live together. In this case the husband drifted into the more subdued years, so that, as the court says, the great divergency of their ages prevented this man and woman from deriving an appreciable amount of happiness from their marriage, and for a long period of time they had not lived together as husband and wife, although occupying the same home. The court said: "An examination of the record discloses that it is not only impossible for these parties to live together as husband and wife, but that it is to their interest and the interest of society that they be divorced, and we think the trial court cor-

rectly granted it on the plaintiff's evidence." The Washington Supreme Court reached this conclusion without recourse to any statute of that state making incompatibility a ground for divorce, and notwithstanding the statute provides that divorce shall be granted on the application of the party "injured".

The Central Law Journal, Vol. 69, page 127, in an issue of August 20, 1901, discussing the policy of divorce legislation, says:

"A very distinguished citizen, ex-Justice Henry B. Brown, formerly of the Federal Supreme Court, lately expressed himself in an address before the Maryland State Bar Association on the above subject. He announced his views as follows:

" 'Separation of church and state, which is a cardinal principle of American jurisprudence, is nowhere more applicable than in that which concerns the marriage relation. * * *

" 'It is not perceived why the partnership created by marriage should so far differ from a commercial partnership that one may be dissolved at pleasure while the other is absolutely indissoluble. A proper regard for the interests of the state as well as the preservation of domestic happiness would seem to require that when the whole object of the matrimonial compact had been defeated by the habitual, persistent and uncontrollable conduct of either party, and that relation which should represent the acme of human happiness is made to stand for

all that is most repugnant to our desires and anticipations, a severance of the ties should be permitted.

" 'I cannot recall a divorce fairly obtained, without fraud and upon due and personal notice to the other side that did not apparently redound to the welfare of the parties and prove a real blessing.' "

█ It would seem unnecessary to cite further from many similar expressions to the same effect. After all, as Mr. Justice Hudspeth said in a specially concurring opinion in Chavez v. Chavez, 39 N.M. 480, 50 P.2d 264, 269, 101 A.L.R. 635: "The responsibility of determining the wisdom or righteousness of this act [making incompatibility a ground for divorce] is not ours. The legislative branch of the state has made it law. Its meaning is plain, and, to my mind, recrimination is not available as a defense under it."

We need not now decide whether recrimination is a defense in a divorce action where the sole ground alleged is incompatibility. We assume that the trial court found against defendant on the issue of recrimination, and rightly. See specially concurring opinions of Mr. Justice Hudspeth and Mr. Justice Bickley in Chavez v. Chavez, supra, for further comments on the meaning of the word "incompatibility" as employed in Chap. 54, S.L.1933.

█ We decline appellant's invitation to give an exact definition of incompatibility. Mr. Justice Hudspeth quoted an eminent authority as saying: "The elements and qualities which may create incompatibility

between persons elude exact definition, so varied are the circumstances and so dependent is such a state of feeling upon education, habits of thought and peculiarities of character." We have no doubt the District Judges understand the wide significance of the word and will apply it understandingly to the facts of a particular case. Some of the lexicographers give "irreconcilableness" as a synonym. We venture the suggestion that this is an important factor to be considered in granting or refusing divorces upon the ground of incompatibility.

In Nelson on Divorce, at Sec. 94, it is said that where cruelty is cause for divorce from bed and board only, one of the parties may leave the other on account of such cruelty, and after the separation has continued for a statutory period, such aggrieved party could convert what was cause for divorce from bed and board into a cause for total divorce.

It occurs to us that after there has arisen a situation where the husband and wife have "permanently separated and no longer live or cohabit together, as husband and wife", either may now have a choice of remedies, viz., institute suit for division of property, or for disposition of the children, without asking for or obtaining in in said suit a dissolution of the bonds of matrimony, under the 1901 Act (N.M.S.A. § 68-502) ; or, file suit for an absolute divorce wherein permanent separation satisfactorily established, might be deemed strong evidence of incompatibility. In other words, the facts which the Court finds sufficient to warrant a permanent separation and relief arising therefrom under the 1901 Act, since the 1933 amendment, might be deemed of force enough to sustain a decree for total divorce. We are not to be understood as saying that in all cases a permanent separation must necessarily precede action for divorce on the ground of incompatibility.

We have seen that the parties being incompatible is the cause of their not being able to live or cohabit together as husband and wife, and conversely the fact that they can no longer live or cohabit together as husband and wife is evidence of incompatibility.

While the husband and wife may permanently separate by consent without any decree of court divorcing them from bed and board, and without giving society any reason for such permanent separation, and may secure a decree of court settling their property rights, custody of children, etc., they cannot secure an absolute divorce by consent, merely. They must go to court if they wish to convert the permanent separation into an absolute divorce, and we think the legislature, by its 1933 amendment making incompatibility a ground for divorce, has clothed the district judge, the Chancellor, as he is sometimes called, with a new discretionary power to be exercised similarly to the exercise of discretionary powers in courts of equity, having due regard to the interests of the parties and the welfare of society. Upon a review of the decisions of the district court in such cases, the ordinary principles governing review by appellate courts, including presump-

tions in favor of the correctness of the judgment; that findings of fact supported by substantial evidence will not be disturbed; and that the exercise of discretion by the trial court will not be disturbed unless there has plainly been an abuse thereof, will apply, the usual deference being given to the judgment of the trial judge who had the advantage of personal contact with the parties and the witnesses.

Appellant makes some point of admissions by plaintiff of certain allegations of the answer claimed to be damaging by failure to reply. In view of the fact that the case was fully tried without any legal exceptions taken to the pleadings, or absence thereof, we consider the omission of a reply as not prejudicial, if indeed one was required.

It is worth mentioning that appellant, by her requested findings and conclusions asking for affirmative relief with respect to property and alimony, invoked a jurisdiction of the court which is, under the statute, dependent on permanent separation of the parties.

The learned trial court, so the evidence attests, gave patient ear to the claims of both parties and reached a conclusion which we are unable to say is either inequitable, unjust or erroneous. Judgment is here rendered dividing the costs and allowing appellant $100 to defray the expenses of her appeal, including attorney's fees.

The judgment is affirmed, and since the district court retained jurisdiction to modify the amount of alimony as may appear proper in the future, the cause is remanded, and

It is so ordered.

BRICE, C.J., and ZINN, SADLER, and MABRY, JJ., concur.