WOLCOTT, Chief Justice.
This is an appeal by the defendant husband from a judgment of divorce granted on the ground of incompatibility pursuant to 13 Del.C. § 1522(12). The sole contention of the husband is that the evidence did not justify the finding of incompatibility.
*382 Incompatibility as a ground for divorce is set out in § 1522(12) as follows:
“(12) When husband and wife are incompatible in that their marriage is characterized by rift or discord produced by reciprocal conflict of personalities existing for 2 consecutive years prior to the filing of the divorce action, and which has destroyed their relationship as husband and wife and the reasonable possibility of reconciliation.”
The basic argument of the husband in this appeal is that the difficulties of these spouses arise from the attitudes of the wife alone, and do not stem from a “reciprocal conflict of personalities”. Of necessity, therefore, we must define this expression.
As was noted in H. v. H., Del.Sup., 253 A.2d 500 (1969) and Doran v. Doran, Del.Super., 245 A.2d 434 (1968), there is no statutory counterpart of § 1522(12) elsewhere. In the other jurisdictions which have adopted incompatibility as a ground for divorce, i. e., Alaska, New Mexico, Oklahoma, and Virgin Islands, the statutes specified only “incompatibility” or “incompatibility of temperament” as the ground, without further definition, leaving it to their courts to define the term. See Hughes v. Hughes, Okl., 363 P.2d 155 (1961); Poteet v. Poteet, 45 N.M. 214, 114 P.2d 91 (1941); Burch v. Burch (3 Cir.), 195 F.2d 799 (1952); Paddock v. Paddock (9 Cir.), 240 F.2d 926, 16 Alaska 427; Annotation, 58 A.L.R.2d 1218.
While we do not find the phrase “reciprocal conflict of personalities” in any other statute, it is apparent that this terminology, as well as other recognizable language in § 1522(12), was taken by the drafters from the opinion of the Supreme Court of Oklahoma in Hughes v. Hughes, Okl., 363 P.2d 155 (1961). There, the meaning of incompatibility as a ground for divorce was defined as follows:
“The term ‘incompatibility’ describes a state or quality of relation between given persons or concepts. A litigant in a divorce case cannot establish incompatibility on his part alone. Legally speaking, incompatibility cannot be unilateral, but is always mutual. One spouse may be disillusioned or disappointed in marriage due to some trivial or imaginary difficulties insufficient to destroy a normal and wholesome matrimonial association. In such case there is no actionable incompatibility. Mutual incompatibility, within the terms of the statute, denotes generally a state of irremediable rift or discord produced by a reciprocal conflict of personalities. It is a condition which by its nature must be bilateral. In such instance the law will not undertake to measure the degree in which each spouse may have contributed to the development of incompatibility. Once a marital relation of this character is established as a fact, there exists in contemplation of law a state of actionable incompatibility, even though the effect of the mismatch be wholly unbearable to one and yet appear somewhat less harmful and disturbing to the other spouse. Rakestraw v. Rakestraw, [Okl., 345 P.2d 888] supra. (Emphasis supplied).
ifc * * * ‡ *
“ * * * The statutory ground of incompatibility does not permit the court to dissolve a marriage merely because its termination is desired by one or both parties. Conversely, when actionable incompatibility is shown, a divorce may not be denied solely because the defending spouse voices opposition to its granting. A contrary holding would make incompatibility dependent in its application upon an agreement or a stipulation between the parties, and thus furnish a vehicle for a consensual divorce which the law did not intend to sanction.”
When § 1522(12) is compared with the above passage of the Hughes case, it becomes obvious, we think, that the drafters took the basic language of our statute from that decision. We assume therefrom *383 that the General Assembly intended to adopt the concept of actionable incompatibility as developed to that point in the Hughes case and its progenitor Rakestraw v. Rakestraw, Okl., 345 P.2d 888 (1959).
In Rakestraw[1], the Court adopted the viewpoint of the Third Circuit Court of Appeals on the subject, as expressed in the leading case of Burch v. Burch (3 Cir.), 195 F.2d 799 (1952):
“ * * * incompatibility of temperament necessarily involves both parties. While one spouse may have a more normal temperament than the other and the overt acts evidencing incompatibility may come largely from the other spouse, it is inconceivable that a husband’s temperament can be compatible with that of his wife if hers is incompatible with his. If there is a clash of personalities both must clash.”
And in Burch, the Court summarized the Danish concept of incompatibility, which apparently had been carried over into the Virgin Islands Divorce Law which, in turn, was obviously the original progenitor of incompatibility as a ground for divorce in this country.[2] The Court there stated:
“ * * * We conclude that while incompatibility of temperament in the Virgin Islands Divorce Law does not refer to those petty quarrels and minor bickerings which are but the evidence of that frailty which all humanity is heir to, it unquestionably does refer to conflicts in personalities and dispositions so deep as to be irreconcilable and to render it impossible for the parties to continue a normal marital relationship with each other. To use the ancient Danish phrase, the disharmony of the spouses in their common life must be so deep and intense as to be irremediable. It is the legal recognition of the proposition long established in the earlier Danish law of the Islands that if the parties are so mis-mated that their marriage has in fact ended as the result of their hopeless disagreement- and discord the courts should be empowered to terminate it as a matter of law.”
This background throws light on the intended meaning of “rift and discord” and “reciprocal conflict of personalities” as those terms are used in § 1522(12). We assume that, in adopting those terms, the General Assembly was aware of the case law which gave rise to them. Therefore, without attempting to paraphrase them, we accept and endorse the above statements from the Hughes and Burch cases as definitive of the meaning of those terms in our statute.
Now, to apply the foregoing tests to the facts of this case:
These parties were married in November, 1949. Their first few years of marriage were relatively happy, and two children were born during this period. The first serious trouble between them began in 1964 or 1965. The personalities of the parties are opposite. The wife is an introvert; the husband an extrovert. Their tastes in relaxation are also opposites. The husband has a strong sexual drive, and has accused the wife of coldness. The husband socially engages in heated and emotional arguments with guests to the occasional embarrassment of the wife.
*384 Fundamentally, however, the basic conflict between these two persons related to financial affairs. The wife is of a saving and frugal nature, while the husband is expansive and not adverse to debt to indulge his wants. The wife worked and turned over her paycheck to the husband for deposit in a joint savings account. He, however, spent her pay and falsified an account showing the deposits made. The husband also borrowed money and forged the wife’s name to two notes. When this came to light the wife arranged to take care of the finances herself, but the husband again borrowed, forging her name. The husband’s employment record was erratic and he lied to the wife. Finally, the wife’s belief in the trustworthiness and honesty of the husband was destroyed and she forced him to live apart.
The husband testified that there is nothing in his wife’s personality which would prevent him from living with her happily; that he still loves her and wants to preserve the marriage.
Under these circumstances, we think there was sufficient evidence to warrant the conclusion that this marriage had been destroyed beyond possibility of reconciliation by “rift or discord produced by reciprocal conflict of personalities.” It is of no significant consequence that the defendant husband now says that he feels no incompatibility on his part. Under the guidelines we have adopted, there can be only one kind of incompatibility — mutual and bilateral. This is inherent in the term. There cannot be a one-sided incompatibility. To paraphrase the Burch case, it is inconceivable that the wife’s personality in the instant case does not conflict with that of the husband if his conflicts with hers. It takes two to make a conflict. If there is a “conflict of personalities”, both must conflict; and the conflict thereby becomes “reciprocal”.
The judgment below is affirmed.

. In Rakestraw, the Supreme Court of Oklahoma departed from certain views it had expressed in Chappell v. Chappell, Okla., 298 P.2d 768 (1956) to the effect that one spouse may be incompatible without the other spouse also being incompatible and contributing to the state of incompatibility existing between them. See 345 P.2d at 890. Therefore, the Chappell ease, upon which the defendant here places reliance, is of little assistance to us.

. The Virgin Islands was the first American jurisdiction to adopt incompatibility as a ground for divorce in 1921. This was followed by New Mexico in 1933, Alaska in 1935, Oklahoma in 1953, and Delaware in 1968.