**WIFE S, Defendant, Appellant,**

v.

**HUSBAND S, Plaintiff, Appellee.**

Supreme Court of Delaware.

Submitted March 11, 1980.

Decided April 1, 1980.

Henry J. Ridgely of Ridgely & Ridgely, P. A., Dover, for defendant appellant.

Thomas J. Stumpf, Georgetown, for plaintiff appellee.

Before HERRMANN, C. J., DUFFY and QUILLEN, JJ.

DUFFY, Justice:

In this case, the Family Court granted a divorce to a husband on the grounds of incompatibility, after refusing to permit his wife to offer testimony to show that the alleged incompatibility was not mutual. The propriety of that ruling is the critical issue in the appeal.

I

In many cases decided over the last decade, this Court has repeatedly held that mutuality of conflict and discord is a requisite for a divorce upon the grounds of incompatibility. See, for example, *T. v. T.*, Del.Supr., 314 A.2d 176 (1973); *Husband v. Wife*, Del.Supr., 280 A.2d 710 (1971); *R.M.H. v. S.M.H.*, Del.Supr., 259 A.2d 376 (1969); *J.A.D. v. P.L.D.*, Del.Supr., 259 A.2d 381 (1969). Those cases were decided under a statute, 13 *Del.C.* § 1522(12), which authorized a divorce to be granted on the following ground:

"[w]hen husband and wife are incompatible in that their marriage is characterized by rift or discord produced by reciprocal conflict of personalities existing for 2 consecutive years prior to the filing of the divorce action, and which has destroyed their relationship as husband and wife and the reasonable possibility of reconciliation."

The present divorce law appears in 13 *Del.C.* § 1505 which reads in part as follows:

"(a) The Court shall enter a decree of divorce whenever it finds that the marriage is irretrievably broken and that reconciliation is improbable.

(b) A marriage is irretrievably broken where it is characterized by (1) voluntary separation, or (2) separation caused by respondent's misconduct, or (3) separation caused by respondent's mental illness, or (4) separation caused by incompatibility."

We focus here on "separation caused by incompatibility" as the alleged ground for legally ending a marriage. Incompatibility is defined in § 1503(3) as follows:

" 'Incompatibility' means marital rift or discord that has destroyed the marriage relation, without regard to the fault of either party."

This definition became law on June 4, 1974. See 59 *Del.L.*, ch. 350.

The precise question before us is whether the statutory change adopting the new definition of incompatibility has mooted the prior decisions cited above. In our judgment, it has not.

Under the preceding Statute, incompatibility was defined as a marital state of affairs "characterized by rift or discord" which had destroyed the husband and wife relationship (and the reasonable probability of reconciliation). In its essence, § 1503(3) is precisely the same: "incompatibility" means "marital rift or discord that has destroyed the marriage relation." The only significant difference between the new and old Statutes relates, not to incompatibility as such but to the *cause* thereof. Thus, under the prior law, incompatibility had to be produced by "reciprocal" conflicts of personalities existing for a specified period. As the Court noted in *Husband v. Wife*, supra, "[s]ome degree of fault . . . on the part of each spouse must exist." 280 *A.2d* at 712. Compare *J.A.D. v. P.L.D.*, supra. The present Act permits divorce, without any specified time period as a basis, and "without regard to the fault of either

party." In other words, mutuality as to *fault* ("produced by reciprocal conflict[s]") is no longer required but mutuality as to incompatibility in the marriage relationship *is* still required. In short, revision of the Statute has not affected the meaning of incompatibility under prior Delaware case law.[1]

This conclusion is supported by the Synopsis to the 1974 Act, which makes clear that the Legislature did not intend to modify the existing definition of incompatibility. The Synopsis states that the Statute permits a divorce when the marriage is irretrievably broken and notes that whether such a breakdown exists "shall be determined by certain standards *presently existing* in Delaware law . . . (emphasis added)."[2] Implicit in the General Assembly's retention and use of presently existing grounds for divorce is an intention that existing definitions or interpretations of such standards remain applicable. If the General Assembly had intended otherwise, it undoubtedly would have said so.

Our construction of the incompatibility requirement is consistent with the common meaning of the word. In construing it, we are, of course, directed by the General Assembly to read it in context and construe it "according to the common and approved usage of the English language." 1 *Del.C*

§ 303. As applied to persons, "incompatible" means "incapable of harmonious association or of acting in accord; disagreeing;" *Webster's New International Dictionary* (2d ed.). Clearly, that implies the interaction of *two* (or more) persons. In common usage one is not regarded as being incapable of harmonious association with one's self, or of disagreeing with one's self. And so it is with incompatibility in the Divorce Act. The Statute does not grant a right of action to a spouse who is incompatible with himself; the law looks to the relationship of *both* spouses and, under prior and settled case law, mutuality of rift or discord is essential.[3] To put it another way, the "marital rift or discord" must be genuine and not the fanciful manufacture of one spouse's unlimited will. Indeed, we invited attention to the prior cases of this Court in *Wife B v. Husband B*, Del., 385 A.2d 732, 733 (1978), when we discussed the Incompatibility Statute.

## II

Turning now to the case at hand, the wife contested the divorce on the ground that incompatibility must be based upon a mutuality of incompatibility, but the Trial Judge prohibited her from presenting evidence in support of that defense.[4] Under the circumstances, the wife was denied pro-

---

1. "Under the guidelines we have adopted, there can be only one kind of incompatibility—mutual and bilateral. This is inherent in the term. There cannot be a one-sided incompatibility. . . . It takes two to make a conflict." *J.A.D. v. P.L.D.*, Del.Supr., 259 A.2d 381, 384 (1969).

2. The four standards are: voluntary separation, separation caused by misconduct, separation caused by mental illness and separation caused by incompatibility. See the Synopsis and 13 *Del.C.* § 1505(b).

3. Our conclusion is also supported by an assessment of the alternative. If the Trial Court's construction of the Statute were correct, then one spouse alone could create incompatibility and secure a divorce on the basis that the marriage relationship is "incompatible" for him, no matter how "compatible" it may be for the other spouse.

4. The record includes the following colloquy:

"[Defendant's Counsel]:
. . . [W]e had other witnesses that we felt would be of some value to Your Honor in . . . determining this case. . . . But . . . we have to abide by Your Honor's decision [that mutuality of incompatibility is not required for divorce].
[Trial Judge]:
Alright. Well, I just wanted to make the record clear that all of those witnesses would be called to substantiate your defense of lack of mutuality.
[Defendant's Counsel]:
Correct.
[Trial Judge]:
And, I've already ruled that [lack of] mutuality is not a defense and therefore those witnesses are excluded. I take it, with that ruling then, that the respondent rests.
[Defendant's Counsel]:
Your Honor, with that ruling we don't have anything else."

cedural due process. *Wife B v. Husband B,* supra.

It follows, therefore, that the judgment must be reversed and the case remanded for further proceedings consistent with our determination that mutuality of incompatibility is required under the present Statute.[5]

Reversed and remanded.

---

5. Before trial on the merits of the divorce, the Trial Judge made certain rulings with respect to the marital property, as a result of which the wife argues that the Judge was predisposed to grant the divorce. Specifically, the Court ordered the wife to cooperate with her husband "in a *bona fide* effort to sell the family home" and then, still before trial on the merits and under threat of contempt, ordered her to permit "necessary signs to be erected," showings made to prospective purchasers, and so on. It is unnecessary to reach the merits of this issue but it is desirable to eliminate it from the case and, therefore, after remand the case is to be assigned to a different Trial Judge.