## BEYER vs. BEYER.

*September 22 — October 12, 1880.*

DIVORCE: *" Cruel and inhuman treatment."*

1. Any wilful misconduct of the husband which endangers the health or life of the wife, exposes her to bodily hazard and intolerable hardship, and renders cohabitation unsafe, is "cruel and inhuman treatment" within the meaning of the statute of divorce; and even a single act of that character, where bodily harm has not only been threatened but committed, with such precedent or attendant circumstances as to satisfy the court that such acts are likely to be repeated, may warrant a decree of divorce.

2. Upon the evidence in this case (for which see the opinion), this court affirms a judgment of divorce upon the ground of cruelty.

APPEAL from the Circuit Court for *Brown* County.

Action for a divorce. Plaintiff had a judgment, from which the defendant appealed.

For the appellant there was a brief by *Coleman & Spence*, and oral argument by *Mr. Spence*.

*Edward S. Bragg*, for the respondent.

COLE, J. The plaintiff places her right to a divorce from the bond of matrimony, in her complaint, upon two grounds: *first*, the acts of adultery therein charged; *second*, the cruel and inhuman treatment of her by the defendant. The circuit court found that the plaintiff was entitled to a divorce upon both grounds. In respect to the second ground the court found that the defendant, for several years next preceding the abandonment of him by the plaintiff, was guilty of brutal, cruel and inhuman treatment of the plaintiff in this: by compelling her to overwork when in delicate health by reason of pregnancy, thereby causing or inducing four miscarriages and permanent injury to her health; by permitting a hired servant to insult the plaintiff in her own house with indecent proposals, and in retaining such servant without punishment in his

Beyer vs. Beyer.

employ, with full knowledge of the insult offered his wife; by endeavoring to induce her to instil unchaste and impure sentiments into the minds of the daughters of the marriage; and by the use of personal violence and rudeness to the plaintiff when in a state of pregnancy, at the time of her final abandonment of him.

We have given the evidence in the case an attentive examination; and while it does not, in our judgment, sustain all these acts of insult and abuse found by the learned circuit court, yet we think it does show such acts of cruel treatment and personal violence on his part as to amount in law to cruelty. The charge that the defendant endeavored to induce the plaintiff to instil into the minds of his daughters unchaste and impure sentiments — in other words, to instruct them in the ways of sin and infamy,— is a charge so revolting to human nature, so contrary to all parental instinct and affection, that we should be unwilling to credit it without clear and positive proof. We do not think the record contains any such proof, and that charge, therefore, we deem unsustained by the evidence. The charge that the defendant used any harsh and violent means to make the plaintiff work when she was in delicate health, or that she was compelled to work at any time, we do not think is established by the evidence. The testimony is abundant that often, for want of proper help, she had more to do than she was able to do; but it does not appear that the defendant did not endeavor to procure help, or that any of the work done by her was other than voluntary. But the charge that the defendant did not resent, in any way, the indecent and insulting proposals made to his wife by a man in his employ, is fully shown by his own testimony. And his conduct in that matter goes a great way, and is a circumstance of much weight, in making out a case of legal cruelty and brutal treatment on his part; for surely no husband with the feelings of a man, and who entertained for his wife proper love and affection, could but resent in some way such a deadly insult and indig-

nity offered to his wife. Such a husband would be likely to treat the offender in a less gentle and considerate manner than the defendant treated, according to his own statement, the attempted seducer of his wife, as he came across him sitting by the side of the road, crying, in the dark, and was told by the man that he had been trying to have intercourse with his wife, and had failed.

The defendant certainly exhibited unexampled self-control and generous forbearance on that occasion, when he invited the man, after such a confession, to ride home with him in his wagon, and then, in a friendly way, proceeded to settle up with him that night by paying him his wages. This conduct serves to show the affection which he entertained for his wife, and his sense of marital duty and obligation. It may not of itself amount to cruelty, in a legal sense, but it surely inclines one the more readily to believe the plaintiff's statements as to his unkind treatment, especially the acts of personal violence inflicted upon her when she finally abandoned his home. She states that upon her returning to the house, after an absence of a few days, to get her clothes, the defendant ill-treated her and would not let her have them. This is her account of what then occurred: "I thought I would go after them, and I was as far as the outside door on the veranda; then he seized me back; I didn't want to go back, and I kept hold of the door-case; he put his arm around my waist and jerked me with all his might, and threw me on the floor, and pushed me through the hall into the parlor, and there he kept watch on the door, and I was in a family way, and I thought I would have another miscarriage then." Nothing could excuse or justify this brutal act of violence, which greatly endangered the life and health of his wife. Concede that she was refractory, and persisted in leaving his home without adequate cause: yet he had no right to treat her in that manner. But it is said this one act of cruel and inhuman treatment does not furnish a sufficient ground for a divorce for cruelty. But it must be admit-

Beyer vs. Beyer.

ted it shows actual bodily harm, not alone threatened but committed, and further shows that the defendant had so little control over his passions that he was likely to repeat the act of personal violence on any provocation.

In the language of the supreme court of New Hampshire: "In the judgment of law, any wilful misconduct of the husband which endangers the life or health of the wife, which exposes her to bodily hazard and intolerable hardship, and renders cohabitation unsafe, is extreme cruelty. And, in order to amount to such cruelty, it is not necessary that there should be many acts. Whenever force and violence, preceded by deliberate insult and abuse, have been once wantonly and without provocation used, the wife [can hardly be considered as safe." *Poor v. Poor*, 8 N. H., 307–316. The defendant, as we feel warranted in assuming, committed an act of violence which rendered cohabitation unsafe, and which there was every reason to suppose he might repeat if his wife continued longer to live with him. We think this makes out a case of cruelty within the statute. *Johnson v. Johnson*, 4 Wis., 135; *Pillar v. Pillar*, 22 Wis., 658. We do not intend, however, to discuss the testimony, but merely to state that after a careful examination of it we agree fully with the circuit court in the conclusion that it shows that the defendant has been guilty of such acts of personal violence towards his wife as to justify a divorce on the ground of cruelty. The interesting questions arising on the other branch of the case, which were so fully discussed, will not be considered. They are purposely left open for further examination and discussion as they may arise. We affirm the judgment of divorce on the ground of cruelty alone.

*By the Court.*— Judgment affirmed.