## BROWN *v.* GREER.

MARRIAGE—ANNULMENT—EQUALLY DIVIDED COURT.
Decree dismissing petition to annul marriage of minors because of alleged affliction of defendant with a venereal disease at time of marriage is affirmed by an equally divided court.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted January 3, 1940. (Docket No. 46, Calendar No. 40,851.) Decided April 19, 1940.

Petition by William J. Brown, by his next friend, against Thressa Greer, also known as Thressa Brown, by her next friend, to annul a marriage. Petition dismissed. Plaintiff appeals. Affirmed by an equally divided court.

*Irving H. Smith,* for plaintiff.

BUSHNELL, C. J. This is an appeal from a decree dismissing plaintiff's petition for an annulment of a marriage. Plaintiff and defendant were married on the 16th day of July, 1937, a license for the marriage having been issued by the probate court of Kent county in accordance with the provisions of 3 Comp. Laws 1929, § 12717 (Stat. Ann. § 25.51). This statute reads:

"The judge of probate of each county in the State shall have authority, and it shall be his duty to issue, without publicity, a marriage license to any female making application to him, under oath, containing a statement that she is with child, which if born alive before her marriage will become a bastard, or has lived with a man and has been considered as his wife, or for other good reason, expressed in such application and deemed to be sufficient by the judge of probate, desires to keep the exact date of the marriage a secret, to protect the good name of herself and the reputation of her family: Provided, That such judge of probate shall have authority to marry persons under marriageable age, where the female is with child, or where she has been living with some man as his wife, in cases in which the application for such license is accompanied by the written request of the parents of both parties, if living, and their guardian or guardians if either or both of the parents are dead, or by the written request of the parent or guardian, as the case may be, of the one under marriageable age, where only one is under the marriageable age now fixed by the statute, when, according to his judgment, such marriage would be a benefit to public morals."

Defendant was then 14 years of age and plaintiff was 17. The baby was born on the 3d day of February, 1938. Fifteen days after its birth, plaintiff filed a petition for annulment, claiming that, at the time of the marriage, defendant was afflicted with

syphilis.  The act upon which plaintiff bases his claimed right to annulment reads in part:

"No insane person, idiot, or person who has been afflicted with syphilis or gonorrhea and has not been cured of the same, shall be capable of contracting marriage." 3 Comp. Laws 1929, § 12695 (Stat. Ann. § 25.6).

The record shows that a Kahn precipitation test of defendant's blood, taken on October 25, 1937, resulted in a positive showing of syphilis. A physician, testifying for plaintiff in answer to a hypothetical question containing facts shown in the record, stated that, in his opinion, defendant could have been afflicted "certainly longer than three or four months." He added:

"The law of averages would certainly indicate that on the 16th day of July, 1937, she was afflicted with syphilis. That, of course, is not an absolutely positive test. There are certain rare conditions which make a positive test which would not be syphilis, but the law of averages speaks very much in favor of its being syphilis."

Another physician connected with the city of Grand Rapids as director of social hygiene, who examined the defendant at about the time of her blood test, stated that, in his opinion, she had been afflicted for at least six months. He said that his examination was made to determine whether "it was acute, infectious, whether it was early secondary or late secondary or tertiary." He did not treat the case "as an acute infectious stage," there being no "evidence of recent origin of it." He was unable to state whether or not the disease was acquired or inherited and his records did not show that defendant had been cured at the time of the trial.

The trial judge said in reference to 3 Comp. Laws 1929, § 12695 (Stat. Ann. § 25.6):

"The act takes away the capacity to contract. Regardless of the act, plaintiff and defendant had no such power and a marriage between these parties only became a valid one when consummated under the provisions of the sections above referred to. * * *

"The law should not be extended to declare a marriage performed under the conditions and circumstances as existed in this case a void marriage. The statute permitting and providing for a marriage of parties of the age of these should not be nullified by the application of the provisions of another statute."

The purpose of section 12717 is wholly different and apart from that of section 12695. The former removes, under certain conditions, only the incapacity of lack of marriageable age. The disability imposed upon those afflicted with a venereal disease, without having been cured, is not remedied by the statute permitting a probate judge to issue a license to persons under marriageable age.

We make no comment as to the effect of Act No. 207, Pub. Acts 1937, as amended by Act No. 112, Pub. Acts 1939, neither of which was in force at the time of this marriage.

The decree dismissing plaintiff's bill of complaint is vacated and one may be entered here granting plaintiff an annulment.

The settled policy of the State to legitimatize issue as expressed in 3 Comp. Laws 1929, § 12717 (Stat. Ann. § 25.51), and 3 Comp. Laws 1929, § 12723 (Stat. Ann. § 25.81), should not be thwarted by the conclusion we are forced to reach in the instant case. Section 12723 reads as follows:

"All marriages which are prohibited by law on account of consanguinity or affinity between the par-

ties, or on account of either of them having a former wife or husband then living, and all marriages solemnized when either of the parties was insane or an idiot, shall, if solemnized within this State, be absolutely void, without any decree of divorce or other legal process: *Provided,* That the issue of such marriage, except that contracted while either of the parties thereto had a former husband or wife living, shall be deemed legitimate.''

Its language does not include the issue of marriages that are void by reason of 3 Comp. Laws 1929, § 12695 (Stat. Ann. § 25.6). The legitimatizing proviso of section 12723 was added in 1883 (Act No. 24, Pub. Acts 1883), and the venereal disease provisions of section 12695 were added in 1899 (Act No. 247, Pub. Acts 1899). See footnotes in Stat. Ann. § 25.81 and § 25.6 for history of these enactments. It is difficult to believe that, at the time the 1899 amendment to section 12695 was made, the legislature knowingly failed to amend the saving clause of section 12723 to include the issue of a marriage void because of a venereal condition existing at the time the marriage was contracted.

It is repugnant to the ends of justice that an innocent child should be made to suffer, either by a species of legal bastardization or by deprivation of needed support. Plaintiff must be held to all the responsibilities imposed on a father and his innocent offspring must be deemed his legitimate issue.

The decree of annulment should so provide. Under the circumstances no costs should be allowed.

SHARPE, NORTH, and BUTZEL, JJ., concurred with BUSHNELL, C. J.

CHANDLER, J. The trial court made no finding of fact unless the following paragraph can be considered as such:

"The proof in the present case indicates that the affliction of the defendant was congenital and was not in a communicative stage at the time of the marriage."

We do not construe this language as a definite finding by the court that defendant was afflicted with syphilis at the time of the marriage. But whether or not said language is susceptible of such construction is unimportant, this being a chancery case, and upon review we hear such cases *de novo,* the purpose of such review being to determine whether a just conclusion has been reached after a hearing in which there has been no error prejudicial to the appellant.

To grant petitioner the relief sought will result in making a social outcast of the defendant, a girl of 14 years of age at the time of the marriage, and bastardize the offspring of the union of the parties. This should not be done without satisfactory and convincing evidence that defendant was afflicted with this dread disease at the time of the marriage.

Confronted with this proposition we have most carefully reviewed the record for the purpose of determining whether or not the petitioner has met the burden imposed upon him to prove the truth of the allegations contained in his petition by a preponderance of the evidence.

The sole issue presented by the pleadings and proof is: Was defendant afflicted with syphilis on the date of the marriage? The only testimony offered on this issue was by plaintiff.

Pearl Kendrick, a doctor of science and director of Western Michigan Laboratory, Department of Health, had charge of a Kahn precipitation test of defendant's blood for syphilis on October 25, 1937. She testified that the record of laboratory examination of case 121, being defendant's, showed positive.

"In making this particular test, four test tubes were used, three test tubes with one particular antigen and the fourth tube with a different antigen. We do that in order to check ourselves. We do it to make the result of our examination more certain. The examination from our records shows 'positive' precipitation in all four tubes. Our laboratory test shows 'positive,' and by 'positive,' it suggests syphilis. There are certain instances that that is not true. If it had been negative that would suggest it was free, but would not be complete evidence."

Dr. Faust, director of social hygiene of the city of Grand Rapids, testified that he treated defendant for syphilis subsequent to the report from the department of health; that he did not treat it as an acute infectious stage; that he did not see any evidence of recent origin of it; that the report from the health department, exhibit 1, showed only positive reaction to the examination; that his records did not show that she was cured. In reply to a hypothetical question he expressed the opinion that she had been afflicted for approximately six months. On cross-examination this witness testified:

"I examined Mrs. Brown myself and I am basing my testimony upon my examination.

"*Q.* What sort of examination did you make?

"*A.* A mouth mucous perhaps and any rash.

"I did not myself administer any test of any kind. I had a blood test made. Over at the Evangeline Home they had a blood test made, I beg pardon. I am basing my opinion here principally upon the test made by the Evangeline Home. I only know of one test they made. It would be very possible that a technical error is made in making one blood test. Usually we make more than one test in order to eliminate the possibility of technical error.

"Occasionally it is possible for a test to be returned 'positive' due to other causes than syphilis. Some acute infectious disease, smallpox, which shows as a rash is usually one, they have some sort of rash or exanthem that gives you the 'positive.' Occasionally tuberculosis; I don't know about pernicious anemia or yaws. The only thing we can depend on in any laboratory test for syphilis, other than the acute manifestations is the 'positive,' and when we do that we take it for granted; just as soon as we possibly can to treat the patient and when anybody comes in with positive blood we treat them and if they stay long enough we repeat it. * * *

"Q. Well do you say positively then that assuming the truth of the blood test October 25, 1937, that three months and a half back, to-wit, July 16, 1937, that Mrs. Brown had syphilis at that time?

"A. Well you are asking me a question that—

"Q. In other words it is impossible to say?

"A. Absolutely.

"Q. Is that about right?

"A. Yes."

Dr. Bishop on direct examination testified:

"Q. Now, Doctor, assume that this young lady was married on the 16th day of July, 1937, assume that on the 25th day of October of that year it is found that she is afflicted with syphilis. Assume up to that time she never knew that she was afflicted, that she had never had on her skin any rash or pimples or sores or lesions of any kind, that is, between her toes or her fingers or in her mouth or on her lips, there had been no sores, soft sores or any other kind, and on her tongue there had never been, and she never knew or had cause to know that she was afflicted with syphilis; and assume that on the 25th day of October an analysis was performed by the health department which revealed what is on that sheet (handing paper to witness). Whether or not

in your opinion, on and before the 16th day of July, 1937, she was afflicted with syphilis, in your opinion?

"*A.*    In my opinion she would have been afflicted certainly longer than three to four months.

"I never knew of a case that cured itself. Inasmuch as this report only shows one thing, 'positive' but shows nothing else, to me it indicates, the possibility that she had syphilis. The law of averages would certainly indicate that on the 16th day of July, 1937, she was afflicted with syphilis. That of course, is not an absolutely positive test. There are certain rare·conditions which make a positive test which would not be syphilis, but the law of averages speaks very much in favor of its being syphilis."

On cross-examination, he said:

"I am not a specialist in the disease of syphilis. The fact this test came back positive is not an absolute indication of syphilis.

"*Q.*    I mean the fact that the test came back positive may indicate that there is syphilis, that is, the fact may be that there is syphilis and it may be that there is not?

"*A.*    Well, I will answer that in this way, if I had a patient take a blood test that came back positive I would treat them for syphilis.

"*Q.*    You would treat them for syphilis but it isn't conclusive?

"*A.*    No, well it is not positive.

"Looking at plaintiff's Exhibit 1 it is not positive evidence that defendant had syphilis unless you exclude other things. * * *

"The procedure is that one has certain suspicions as to the existence of a certain disease and treats the patient for that, and it may be ascertained that the patient does not have that disease then I move on to something else, one has to make diagnosis before one can give rational treatment."

We are mindful that the only competent evidence of the presence of this disease in an individual must

necessarily come from physicians, and that the medical witnesses in some portions of their testimony expressed the opinion that defendant was so afflicted on the date of the marriage. It, therefore, becomes necessary for us to determine as to whether there were sufficient facts before such witnesses to furnish a basis for such an opinion, and also as to whether or not such opinion testimony was not so modified and weakened by explanations that it should be given but little evidentiary value.

To summarize this opinion testimony, Miss Kendrick says, "our laboratory test shows 'positive' and by 'positive,' it suggests syphilis." Dr. Bishop says, "If I had a patient take a blood test that came back positive I would treat them for syphilis. * * * It is not positive. Looking at plaintiff's exhibit 1, it is not positive evidence that defendant had syphilis unless you exclude other things." Dr. Faust concluded his testimony by saying, in effect, that from this test it is absolutely impossible to say that defendant had syphilis on the date of her marriage to petitioner.

The most that can be said for these tests as a basis for their testimony and examinations is that defendant on October 25, 1937, had symptoms of syphilis which justified medical treatment therefor. They certainly did not form the basis for any convincing testimony that defendant at the time of the marriage was afflicted therewith.

The record presents testimony which is far from convincing to us that defendant was afflicted as charged at the time of the marriage.

The decree is affirmed. Appellee not having filed a brief, no costs will be allowed.

POTTER, McALLISTER, and WIEST, JJ., concurred with CHANDLER, J.