BURCH

v.

BURCH

No. 10,518

United States Court of Appeals

Third Circuit

Argued February 11, 1952

At Charlotte Amalie, Virgin Islands

Decided April 16, 1952

*See, also, 195 F.2d 799, and 2 V.I. 596.*

561

562

RUTH MIRIAM BURCH, *pro se*

DAVID E. MAAS, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before MARIS, MAGRUDER, and STALEY, *Circuit Judges*

MARIS, *Circuit Judge*

The plaintiff, Joseph E. Burch, Jr., filed a complaint against his wife, the defendant, Ruth Miriam Burch, in the District Court of the Virgin Islands, Division of St. Thomas and St. John, seeking a divorce on the ground of incompatibility of temperament. The defendant filed an answer in which she sought the dismissal of the plaintiff's complaint and a counterclaim seeking a divorce and alimony upon the ground of her husband's cruel treatment of her. At the demand of. the defendant, acquiesced in by the plaintiff, the case was .tried in the District Court by a jury of six,[1] which rendered a verdict in favor of the plaintiff. Following the verdict the District Court entered a decree approving it and granting an absolute divorce to the plaintiff. The defendant thereupon took the appeal now before us.

At the outset we are confronted with the question whether an action for divorce may be tried to a jury under the law of the Virgin Islands. Section 1 of the Divorce Law of the Virgin Islands (Act Leg. Assem., Bill No. 14; 16 V.I.C. § 101 et seq.), the full text of which is set out in a footnote,[2] provides that an action

[1] Section 1, Chapter 13, Title V, of the Code of Laws of the Municipality of St. Thomas and St. John, enacted by ordinance approved March 17, 1921, authorizes the parties in cases involving misdemeanors or civil actions to consent to a jury consisting of a less number than twelve but not less than six members [for present provisions, see 5 V.I.C. §§ 322, 3602; 1954 Revised Organic Act of the Virgin Islands, § 26 (prec. 1 V.I.C.; .48 U.S.C. § 1616); Rule 48 of the Federal Rules of Civil Procedure (5 V.I.C., App. I; 28 U.S.C. following § 2072); and Rule 23(b) of the Federal Rules of Criminal Procedure (5 V.I.C., App. II; 18 U.S.C. following § 3771)].

[2] "Law Concerning Actions to Declare Void or Dissolve the Marriage Contract, and for Other Purposes.

"Be it enacted by the Legislative Assembly of the Virgin Islands in session assembled:

"**Section 1.** A husband or wife may maintain an action of equitable nature against the other for a legal separation or the dissolution of the marriage contract, or to have the same declared void, as provided in this chapter.

"**Section 2.** All marriages which are prohibited by law on account of

for the dissolution of the marriage contract is "an action of equitable nature." Chapter 38 of Title III of the Code of Laws of the Municipality of St. Thomas and

consanguinity between the parties, or on account of either of them having a husband or wife then living shall, if solemnized within the district, be absolutely void.

"Section 3. When either of the parties to a marriage shall be incapable of making such contract or assenting thereto for want of legal age or sufficient understanding, or when the consent of either party shall be obtained by force or fraud, such marriage shall be void from the time it is so declared by the decree of a court having jurisdiction thereof.

"Section 4. A marriage may be declared void from the beginning at the action of either party, for any of the causes specified in section two of this chapter, and whether so declared or not shall be deemed and held to be void in any action or proceeding whatever in which the same may come in question; but a marriage once declared to be valid by the judgment of a court having jurisdiction thereof, in an action for that purpose, can not afterwards be questioned for the same cause, direct or otherwise.

"Section 5. A marriage shall not be declared void for any of the causes specified in section three of this chapter, except at the action or claim of the party laboring under the disability, or upon whom the force or fraud was imposed or practiced; nor at the action or claim of such party if it appears that the parties freely cohabited together as husband and wife after the party had arrived at legal age, acquired sufficient understanding, been restored to reason, freed from the force, or discovered the fraud, as the case may be.

"Section 6. When either husband or wife shall claim or pretend that the marriage is void or voidable, as provided in sections two and three of this chapter, the same may be declared valid and lawful at the action of the other, and in such action the court shall have power, if the pleadings and proof authorize it, to declare such marriage void from the beginning or from the time of the judgment, or that it is valid and lawful, and binding on the parties thereto.

"Section 7. A legal separation or the dissolution of the marriage contract may be declared at the instance of the injured party for any of the following causes: (1) Impotency existing at the time of the marriage and continuing to the commencement of the action; (2) Adultery; (3) Conviction for felony; (4) Wilful desertion for the period of one year; (5) Cruel and inhuman treatment calculated to impair health or endanger life; (6) Insanity of either spouse occurring after marriage; (7) Habitual gross drunkenness contracted since marriage and continuing for one year prior to the commencement of the action; (8) Incompatibility of temperament.

"Section 8. When a marriage has been solemnized in the district an action may be maintained to declare it void if the plaintiff is an inhabitant of the district at the commencement of the action. If the marriage has not been solemnized in the district, such action can only by maintained when the plaintiff has been an inhabitant thereof for six weeks prior to the commencement of the action.

"Section 9. In an action for the dissolution of the marriage contract or for a legal separation the plaintiff therein must be an inhabitant of

St. John (1921) provides the procedure for the trial of issues in actions of an equitable nature. Section 1 of that chapter (5 V.I.C. §§ 321, 321 note) provides that in such

the district at the commencement of the action and for six weeks prior thereto, which residence shall be sufficient to give the Court jurisdiction without regard to the place where the marriage was solemnized or the cause of action arose.

"Section 10. In an action for the dissolution of the marriage contract on account of adultery the defendant may admit the adultery and show in the bar of action: (1) That the act was committed by the procurement or with the connivance of the plaintiff; or, (2) That the act had been expressly forgiven or impliedly so, by the voluntary cohabitation of the parties after knowledge thereof; or, (3) That the plaintiff has been guilty of adultery also without the procurement or connivance of the defendant and not forgiven as provided in subdivision two of this section; or, (4) That the action has not been commenced within one year after the discovery of the act by the plaintiff.

"When the action is for any of the causes specified in subdivisions three, four, five or seven of section 7 of this chapter, the defendant may admit the charge and show in bar of the action that the act was committed by the procurement of the plaintiff, or that it has been expressly forgiven; and in case the action is founded on subdivision three of said section, the defendant may also show in bar thereof that the action was not prosecuted within one year after the same occurred to the plaintiff.

"Section 11. After the commencement of an action, and before a judgment therein, the court or judge thereof may, in its discretion, provide by order as follows: (1) That the husband pay, or secure to be paid, to the Clerk of the Court such an amount of money as may be necessary to enable the wife to prosecute or defend the action, as the case may be; (2) For the care, custody, and maintenance of the minor children of the marriage during the pendency of the action; (3) for the freedom of the wife from the control of the husband during the pendency of the action and the Court may restrain either or both parties from disposing of the property of either party pending the action.

"Section 12. Whenever a marriage shall be declared void or dissolved the Court shall have power to further decree as follows: (1) For the future care and custody of minor children of the marriage as it may deem proper having due regard to the age and sex of such children and unless otherwise manifestly improper giving the preference to the party not in fault; (2) For the recovery from the party in fault, and not allowed the care and custody of such children; such an amount of money, in gross or in installments, as may be just and proper for such party to contribute toward the nurture and education thereof; (3) For the recovery from the party in fault such an amount of money, in gross or in installments, as may be just and proper for such party to contribute to the maintenance of the other; (4) For the delivery to the wife when she is not the party in fault, of her personal property in the possession or control of the husband at the time of giving the judgment; (5) For the appointment of one or more trustees to collect, receive, expend, manage, or invest, in such manner as the court shall direct, any sum of money adjudged for the maintenance of the wife or the nurture and education of minor children

actions "Both issues of law and fact shall be tried by the court, unless referred [to a referee], provided, however, the court may, in its discretion, order a jury to inquire into a fact and render a verdict as to such fact."[3] Reference to a referee is provided for by Chapter 19 of Title III (5 V.I.C. § 1 note), while Section 6, Chapter 1, Title I (4 V.I.C. § 36), authorizes the judge of the District Court to empower the District Court Commissioner to hear the testimony in designated categories of civil cases and report his findings to the judge.

■■ It will thus be seen that the procedural law in the Virgin Islands applicable to actions for divorce requires that issues of fact shall be tried by the court, unless referred to a referee or to the District Court Commissioner, and that a jury may be employed only to make findings as to particular facts. Here the jury was not so employed. On the contrary the case was tried

committed to her care and custody; (6) to change the name of the wife when she is not the party in fault.

"Section 13. At any time after a judgment is given the court or judge thereof, upon the motion of either party on notice shall have power to set aside, alter, or modify so much of the judgment as may provide alimony or for the appointment of trustees for the care and custody of the minor children, or the nurture and education thereof, or the maintenance of either party in the action.

"Section 14. A judgment declaring a marriage void or dissolved by the action or claim of either party shall have the effect to terminate such marriage as to both parties, except that neither party shall be capable of contracting marriage with a third person, until the action has been heard and determined on appeal, and if no appeal be taken, until the expiration of the period allowed by law to take such appeal; and if he or she does so contract, such party shall be liable therefor as if such judgment had not been given. The within provisions shall be retrospective and all marriage contracts heretofore entered into by divorced persons, in conformity with the within provisions, are valid and binding.

"Section 15. All prior laws and ordinances or parts thereof in conflict with the provisions of this Act are hereby repealed and shall be void and of no effect.

"Section 16. Thirty days after approval by the Governor this law shall be in force and effect."

Approved December 29, 1944.

[3]Section 1, Chapter 38, Title III, of the Code of Laws of the Municipality of St. Croix [1921; 5 V.I.C. §§ 321, 321 note] contains similar provisions.

as an ordinary civil jury action and all the issues of fact were submitted to the jury to be determined by a single verdict in favor of the plaintiff or the defendant. This general reference of all the issues in the case to a jury was unwarranted and the verdict rendered by the jury was, therefore, without legal effect. The decree entered thereon must accordingly be set aside unless we are able to conclude, after the review of the record de novo which it is our duty to undertake on this appeal,[4] that the evidence fairly establishes the existence of a state of facts which under the applicable rules of law will support the decree which the District Court entered on the verdict. We turn, therefore, to consider the issues of fact and law which the case presents.

■-■ At the outset we are confronted with a question of jurisdiction. Under our system of law, judicial power to grant a divorce is founded on domicile. Williams v. North Carolina (1945) 325 U.S. 226, 229, 65 S. Ct. 1092, 89 L. Ed. 1577. Accordingly the domicile of at least one of the spouses must be within a state or territory in order to give the courts of that state or territory power to dissolve the marriage. Section 9 of the Divorce Law of the Virgin Islands (16 V.I.C. § 106) provides that the plaintiff in an action for the dissolution of marriage "must be an inhabitant of the district at the commencement of the action and for six weeks prior thereto, which residence shall be sufficient to give the Court jurisdiction." In the light of the rule of law to which we have referred the words "inhabitant" and "residence" as used in the statute must be taken to mean "domiciliary" and "domicile" respectively. It follows that in order to support a decree for divorce in the Virgin Islands

[4]Clen v. Jorgensen, 3 Cir., 1920 [1 V.I. 497], 265 Fed. 120; Soto v. United States, 3 Cir., 1921 [1 V.I. 536], 273 Fed. 628; People of Virgin Islands v. Price, 3 Cir., 1950 [2 V.I. 492], 181 F.2d 394, 397-399; Callwood v. Kean, 3 Cir., 1951 [2 V.I. 526], 189 F.2d 565, 581.

there must be a finding by the District Court that the plaintiff was domiciled in the Virgin Islands at the commencement of the action and for six weeks prior thereto. Domicile is a familiar concept in the law[5] upon which we think it unnecessary to elaborate other than to point out that it involves the idea of a residence sufficiently permanent that its termination is not presently contemplated. Jurisdiction to decree a divorce is not conferred upon the court by a mere temporary residence in the district which is accompanied by a present intention on the part of the plaintiff to leave the Islands as soon as a divorce is granted.

█ The uncontradicted evidence in this case supports a finding that the plaintiff satisfied the statutory requirement of domicile in the Virgin Islands. He is an electrical engineer. He had been employed by the Mine Grande Oil Company in Venezuela. He left Venezuela in May, 1950, and later gave up his employment with the oil company. About the first of July he came to St. Thomas where he secured employment with the Power Authority under contract to maintain their switchboard and to assist in technical problems which might arise in the telephone system. He was also employed by the Caribbean Enterprise Corporation to help with the work on the cable system for the new telephone system. This suit was begun on August 31, 1950. He testified at the trial on April 16, 1951, that he had lived in St. Thomas nine or ten months and was engaged in the employment above mentioned. We conclude that the District Court had jurisdiction to entertain the suit.

█ The plaintiff's suit is based upon the ground of incompatibility of temperament. This was one of the

[5]Mitchell v. United States (1874) 21 Wall. 350, 88 U.S. 350, 352, 22 L. Ed. 584; Williams v. North Carolina (1942) 317 U.S. 287, 298, 63 S. Ct. 207, 87 L. Ed. 279; Winans v. Winans (1910) 205 Mass. 388, 91 N.E. 394, 28 L.R.A. (n.s.) 992; Restatement, Conflict of Laws, §§ 9 comment e, 11.

grounds of divorce recognized in the Code of Laws of the Municipality of St. Thomas and St. John as originally enacted by the Colonial Council of the Municipality in 1921[6] and was carried over into the Divorce Law enacted by the Legislative Assembly in 1944 (section 7(8); 16 V.I.C. § 104(a)(8)). The Virgin Islands was the first American jurisdiction to adopt incompatibility as a ground for divorce, being followed in 1933 by New Mexico[7] and in 1935 by Alaska.[8]

■ ■ Under the Danish law which was in force in the Islands at the time of the adoption of the codes in 1920 and 1921 divorce upon grounds analogous to incompatibility of temperament had been recognized.[9] Accordingly the inclusion of this ground in the codes did not involve a radical innovation in these Islands. On the contrary there is strong ground for thinking that it was inspired by the preexisting Danish law. The codes adopted by the Colonial Councils of the two Virgin Islands municipalities in 1920 and 1921 were taken largely from

[6]Code of Laws of the Municipality of St. Thomas and St. John [1921], Title III, Chapter 44, Section 7, subdivision Eighth. It also appeared in the same title, chapter, section and subdivision of the Code of Laws of the Municipality of St. Croix as originally enacted by the Colonial Council of St. Croix in 1920 [published in 1921].

[7]Laws of New Mexico (1933) Chapter 54, p. 71; New Mexico Statutes (1941) Sec. 25-701.

[8]Session Laws of Alaska 1935, Chapter 54, p. 120; Alaska Compiled Laws Annotated, 1949, Vol. 3, § 56-5-7.

[9]In Denmark after 1770 divorces became more frequent and were given on new grounds, in part for unmerited misfortunes such as insanity or leprosy, in part for *irremediable disharmony in the common life* ["ubode-lig Uvilje til Samliv (odium implacabile)"]. From 1790 the records show that an important change occurred, namely, that many divorces were given without there being any distinct legal grounds, notably when the parties had separated, but also when there had been no separation. Viggo Bentzon, Familieretten, Kobenhavn, 1924, vol. 1, p. 155.

By a law of March 23, 1827, in force in the Danish West Indies, a royal consent divorce might be given by the authorities when the spouses after a separation agreement had lived separately for three years and spiritual and temporal mediation had failed and both wished a dissolution of the marriage and were agreed on the terms of the divorce. Viggo Bentzon, Den Danske Familieret, Kobenhavn, 1910, pp. 245, 246.

the codes of the Territory of Alaska[10] and Title III, chapter 44, Section 7, of each code (which sections have now been incorporated in Section 7 of the 1944 Act) contained the whole of Section 1299 of the Code of Civil Procedure of Alaska[11] verbatim. The latter section set forth only six grounds for divorce, however, while the section as enacted in the Virgin Islands codes contained eight, the two additional grounds being insanity occurring after marriage and incompatibility of temperament. Since these were grounds then unknown to the Alaska law but recognized under the Danish law then in force in the Islands it would seem most likely that they were added to preserve that existing law. This background throws light upon the intended meaning of the phrase as a statutory ground for divorce in the Virgin Islands. The decisions of the Supreme Court of New Mexico construing a similar provision of the divorce law of that state are also helpful in this connection.[12] We conclude that while in-

[10]Titles II, Civil Law, III, Civil Procedure, IV, Criminal Law, and V, Criminal Procedure, of the Code of Laws of the Municipality of St. Croix, adopted by Ordinance of the Colonial Council of St. Croix approved June 15, 1920 [published in 1921], and of the Code of Laws of the Municipality of St. Thomas and St. John adopted by ordinance of the Colonial Council of St. Thomas and St. John approved March 17, 1921, were largely taken from Titles XII, Civil Code, XIII, Code of Civil Procedure, XIV, Criminal Code, and XV, Code of Criminal Procedure, of the Compiled Laws of the Territory of Alaska, 1913.

[11]Compiled Laws of the Territory of Alaska, 1913, Title XIII, Code of Civil Procedure, Sec. 1299.

[12]Justice Hudspeth, in a specially concurring opinion in the case of Chavez v. Chavez (1935) 39 N.M. 480, 486, 487, 50 P.2d 264, 267, 268, 101 A.L.R. 635, said:

"'Incompatibility' is defined by the Century Dictionary as: 'The quality or condition of being incompatible; incongruity; irreconcilableness.' And Webster's New International Dictionary: 'Quality or state of being incompatible; inconsistency; . . . incapable of harmonious combination; incongruous; as, incompatible colors; incapable of harmonious association or acting in accord; disagreeing; as incompatible persons. . . .' Pope's Legal Definitions gives the following: 'Incompatibility. "The elements and qualities which may create incompatibility between persons elude exact definition, so varied are the circumstances and so dependent is such a state of feeling upon education, habits of thought and peculiarities of character. It must be assumed that the parties understood the wide sig-

compatibility of temperament in the Virgin Islands Divorce Law does not refer to those petty quarrels and minor bickerings which are but the evidence of that frailty which all humanity is heir to, it unquestionably does refer to conflicts in personalities and dispositions so deep as to be irreconcilable and to render it impossible for the parties to continue a normal marital relationship with each other. To use the ancient Danish phrase, the disharmony

nification of the word and used it understandingly (in a contract for employment that could be annulled for 'dishonesty, incapacity, incompatibility or breach of the agreement') . . . The word is not a word of art, or of technical or local meaning, or having two distinct meanings, circumstances which have been held to justify parol evidence of the meaning of a word used in a written contract. (Greenl. Ev. § 295.) The largeness of the meaning of the term . . . is no reason for limiting its interpretation, nor does it furnish any reason for permitting parol evidence in explanation." Gray v. Shepard, 147 N.Y. 177, 180.'

\* \* \*

"When the Legislature wrote this additional ground of divorce into our law, they intended to afford a remedy for a spouse incompatible with his or her mate, and that too without regard to the wishes of the other spouse, or the fact that the other spouse might have a ground for divorce. It is a recognition of the fact that in many cases both spouses are to blame, as said in Stiles v. Stiles, 224 Ky. 526, 6 S.W.2d 679, 680: 'If the wife were required to be entirely without fault before she could ask a support from her husband, it would work a great hardship upon the wife, and give an undue advantage to the equally faulty husband, since divorces are generally the result of imperfections of character of both husband and wife'."

In Potect v. Potect (1941) 45 N.M. 214, 222-223, 114 P.2d 91, 96, the Supreme Court of New Mexico said:

". . . See specially concurring opinions of Mr. Justice Hudspeth and Mr. Justice Bickley in Chavez v. Chavez, supra, for further comments on the meaning of the word 'incompatibility' as employed in Chap. 54, S.L. 1933.

"We decline appellant's invitation to give an exact definition of incompatibility. Mr. Justice Hudspeth quoted an eminent authority as saying: 'The elements and qualities which may create incompatibility between persons elude exact definition, so varied are the circumstances and so dependent is such a state of feeling upon education, habits of thought and peculiarities of character.' We have no doubt the District Judges understand the wide signification of the word and will apply it understandingly to the facts of a particular case. Some of the lexicographers give 'irreconcilableness' as a synonym. We venture the suggestion that this is an important factor to be considered in granting or refusing divorces upon the ground of incompatibility.

"In Nelson on Divorce, at Sec. 94, it is said that where cruelty is cause for divorce from bed and board only, one of the parties may leave the

of the spouses in their common life must be so deep and intense as to be irremediable. It is the legal recognition of the proposition long established in the earlier Danish law of the Islands that if the parties are so mismated that their marriage has in fact ended as the result of their hopeless disagreement and discord the courts should be empowered to terminate it as a matter of law.

The evidence in this case, the details of which it would serve no useful purpose to recount, supports a finding of the existence of such a state of incompatibility of temperament between the parties. The statute, however, provides that a divorce may only be granted at the instance of the "injured party." We must, therefore, determine whether the plaintiff has met the burden of showing that he was an injured party in the sense contemplated by the statute.

▉ First we must consider whether the statutory phrase "injured party"[13] means not only one who is injured by the grounds alleged for divorce but also one who is innocent of any conduct which would afford his

other on account of such cruelty, and after the separation has continued for a statutory period, such aggrieved party could convert what was cause for divorce from bed and board into a cause for total divorce.

"It occurs to us that after there has arisen a situation where the husband and wife have 'permanently separated and no longer live or cohabit together, as husband and wife', either may now have a choice of remedies, viz., institute suit for division of property, or for disposition of the children, without asking for or obtaining in in [sic] said suit a dissolution of the bonds of matrimony, under the 1901 Act (N.M.S.A. § 68-502); or, file suit for an absolute divorce wherein permanent separation satisfactorily established, might be deemed strong evidence of incompatibility. In other words, the facts which the Court finds sufficient to warrant a permanent separation and relief arising therefrom under the 1901 Act, since the 1933 amendment, might be deemed of force enough to sustain a decree for total divorce. We are not to be understood as saying that in all cases a permanent separation must necessarily precede action for divorce on the ground of incompatibility.

"We have seen that the parties being incompatible is the cause of their not being able to live or cohabit together as husband and wife, and conversely the fact that they can no longer live or cohabit together as husband and wife is evidence of incompatibility."

[13]Compare Poteet v. Poteet (1941) 45 N.M. 214, 114 P.2d 91.

or her spouse grounds for divorce. We think that the divorce law of the Virgin Islands does not impose such a burden upon a plaintiff in divorce. The statute does not require, as do some divorce laws,[14] that suit must be brought by the innocent and injured party. Moreover it is perfectly clear that in the case of at least two of the grounds for divorce recognized by the statute, impotency existing at the time of the marriage and insanity occurring after marriage, there can be no question of either innocence or guilt. In those cases the phrase "injured party" can only mean the party who has lost the privilege of enjoying a normal marital relationship by virtue of the physical disability of the other. We think that the statutory phrase must be given the same meaning in the case of each of the other grounds for divorce. We, therefore, conclude that the plaintiff was not required to prove himself innocent of any conduct which might have been grounds for divorce at the instance of the defendant but only that he had been injured by the existence of the ground which he asserts, namely, incompatibility of temperament.

The question remains whether the plaintiff can assert that he is injured, within the meaning of the statute, by incompatibility of temperament in which he himself participates. For incompatibility of temperament necessarily involves both parties. While one spouse may have a more normal temperament than the other and the overt acts evidencing incompatibility may come largely from the other spouse, it is inconceivable that a husband's temperament can be compatible with that of his wife if hers is incompatible with his. If there is a clash of personalities both must clash. It necessarily follows, we think, that in cases of incompatibility of temperament both spouses are injured by their common incompatibility. Each

[14]For example see the Pennsylvania Act of May 2, 1929, P.L. 1237, 23 P.S. Pa., § 10; Anthony v. Anthony (1946) 160 Pa. Super. 18, 49 A.2d 877.

has lost the right and opportunity to enjoy a normal marital association with the other. It is accordingly clear that the plaintiff in this case has shown himself to be an injured party entitled to bring suit for divorce on the ground of incompatibility of temperament even though his temperament is just as incompatible with that of the defendant as hers is with his.

█ We next must consider whether the defense of recrimination is available in this suit. For the defendant seeks to defeat the plaintiff's suit by alleging that he was guilty of cruel treatment of her which, she asserts, bars him from obtaining a divorce from her. Before considering the validity of this defense, however, we pause to remark that incompatibility of temperament on the part of the plaintiff could not itself operate as a defense by way of recrimination against his suit for divorce on the same ground.[15] Indeed, the defendant makes no such contention in this case. Her defense asserted by way of recrimination is, as we have said, that the plaintiff was guilty of cruel treatment of her. We must determine whether this defense is available to her since there is evidence of such cruelty on the plaintiff's part and indeed in his testimony he conceded certain instances of it. We, therefore, proceed to consider the extent to which recrimination is available as a defense in a suit for divorce in the Virgin Islands.

In determining this question we look first to the background of Danish law. It appears that the only true defense of recrimination which that law recognized was that a plaintiff seeking a divorce on the ground of adultery could not have a decree if it were shown that he also had committed adultery.[16] When we turn to the codes

[15]In Clark v. Clark (1950) 54 N.M. 364, 225 P.2d 147, 149, 21 A.L.R.2d 1263, the Supreme Court of New Mexico said: "It would be absurd to say that 'incompatibility' itself could be pleaded by way of recrimination as a defense to a divorce sought upon the ground of incompatibility."
[16]Viggo Bentzon, Den Danske Familieret, Kobenhavn, 1910, pp. 217, 218.

which the Colonial Councils of the two municipalities of the Virgin Islands adopted under American sovereignty in 1920 and 1921 we find in Title III, Chapter 44, Section 10, the defense of recrimination authorized in this same instance and in this instance only. Each provides that in an action for divorce on the ground of adultery the defendant may admit the adultery and show in bar of the action that the plaintiff has been guilty of adultery also. This section of the codes was carried without change into Section 10 of the Divorce Law of 1944 as enacted by the Legislative Assembly for both municipalities. As we have already pointed out, the original codes of 1920 and 1921 were largely taken from the codes of Alaska. The provisions of Section 10 here under discussion were taken without material change from Section 1302 of the Code of Civil Procedure of Alaska.[17] They likewise reflected the existing Danish law on the point, as we have indicated. In this background the legislative intent would appear to be clearly inferable not to permit the defense of recrimination to bar the granting of a divorce in other cases.

It may be conceded that a majority of the decisions in the various states have held that the defense of recrimination will bar a plaintiff from obtaining a divorce if knowingly and without connivance or justification he has committed an offense which itself would amount to a ground for divorce. In that case, say these courts, no divorce will be granted to either party. The doctrine of recrimination has been rested upon the equitable maxim that he who comes into equity must do so with clean hands, upon the doctrine that divorce is a remedy for

---

[17]Compiled Laws of the Territory of Alaska, 1913, Title XIII, Code of Civil Procedure, Sec. 1302.

an injured spouse, not for a guilty one,[18] and upon the contract theory that he who seeks redress for the violation of a contract resting on mutual and dependent covenants must himself have performed the obligations on his part.[19] But the doctrine of recrimination in divorce has been much criticized in recent years.[20] For it ignores the fact that marriage is not a mere private contract but rather a status of such basic importance in the social structure that the state has a vital interest in its proper continuance and appropriate termination.[21] From a social point of view it is hard to defend the rule that recrimination is an absolute bar to the granting of a divorce for it requires that parties who are guilty of conduct which makes their marriage impossible of success shall continue their impossible marital relationship as a sort of punishment for their mutual guilt. For this reason the application of the doctrine has been relaxed as an

[18]See II Vernier, American Family Laws, 1932, Section 78; 1 Nelson, Divorce and Annulment, 2d ed. 1945, §§ 10.01, 10.02; Keezer, Marriage and Divorce, 3d ed. 1946, § 522.

[19]Comfort v. Comfort (1941) 17 Cal.2d 736, 112 P.2d 259, 268; Brazell v. Brazell (1942) 54 Cal. App.2d 458, 129 P.2d 117, 118.

[20]Hatfield v. Hatfield (1932) 113 W. Va. 135, 167 S.E. 89, 91-92; Vanderhuff v. Vanderhuff (1944) 79 App. D.C. 153, 144 F.2d 509; Stewart v. Stewart (1946) 158 Fla. 326, 29 So.2d 247, 170 A.L.R. 1073. See also dissent in Evans v. Evans (1945) 176 Or. 403, 157 P.2d 495, 501; Feinsinger and Young, Recrimination in Divorce, 1931, 6 Wis. L. Rev. 195, 198; Bradway, The Innocent Spouse, 1937, 11 Tulane L. Rev. 377; Beamer, Recrimination in Divorce Proceedings, 1942, 10 Kansas City L. Rev. 213, 249-255; Bunkley, Recrimination in Divorce Law, 1949, 20 Miss. L.J. 327; Scott, Doctrine of Recrimination, 1949, 21 Rocky Mt. L. Rev. 407, 417; and the following notes, 1926, 26 Col. L. Rev. 83; 1930, 29 Mich. L. Rev. 232; 1943, 28 Iowa L. Rev. 341; 1945, 21 Ind. L.J. 53; 1947, 18 Miss. L.J. 471; 1948, 36 Ky. L.J. 342.

[21]Rinehart v. Rinehart (1920) 91 N.J. Eq. 354, 110 Atl. 29, 30; Wright v. Beveridge (1927) 120 Or. 244, 251 Pac. 895, 897; Winning v. Winning (1937) 366 Ill. 57, 7 N.E.2d 750, 753; Michell v. Michell (1939) 134 Pa. Super. 230, 3 A.2d 955, 956; McClellan v. McClellan (1939) 290 Mich. 680, 288 N.W. 306, 291 N.W. 640, 127 A.L.R. 731, 732; State ex rel. Couplin v. Hostetter (1939) 344 Mo. 770, 129 S.W.2d 1; Cahaley v. Cahaley (1943) 216 Minn. 175, 12 N.W.2d 182, 184, 157 A.L.R. 1; Hopping v. Hopping (1943) 233 Iowa 993, 10 N.W.2d 87, 89, 152 A.L.R. 436; Smith v. Smith (1943) 69 R.I. 403, 34 A.2d 726, 728.

absolute bar to divorce in a number of jurisdictions.[22] Among these is New Mexico in which it has been specifically held that the defense of recrimination is not an absolute bar in a suit for divorce on the ground of incompatibility.[23]

It appears that in the present case the District Court sought to apply the doctrine of comparative rectitude rather than the strict rule of recrimination. The judge in charging the jury said, inter alia: "In other words, you will have to determine whether you believe — if you find that there is wrong on both sides — that the wrong which the husband did the wife overbalances the wrong which the wife did the husband; or the wrong which the wife did the husband overbalances the wrong which the husband did the wife. You will have to weigh these issues and decide whether you find the issues in favor of the one or the other." It is true that this doctrine of comparative rectitude has been adopted in some jurisdictions in recent years as a modification of the more rigorous doctrine of recrimination.[24] Obviously, it could not apply to a case of incompatibility of temperament and in any event the Legislative Assembly of the Virgin Islands did not prescribe it in the Divorce Law of 1944.

 In accord with what we believe to be the legislative intent we hold that the defense of recrimination is not a bar to the granting of a divorce under the laws of the Virgin Islands except in the circumstances specified in Section 10 of the Divorce Law and that the doctrine of comparative rectitude is not applic-

[22]See Vanderhuff v. Vanderhuff (1944) 79 App. D.C. 153, 144 F.2d 509; Stewart v. Stewart (1946) 158 Fla. 326, 29 So.2d 247, 170 A.L.R. 1073; Hokamp v. Hokamp (1949) 32 Wash.2d 593, 203 P.2d 357; and cases cited in annotations in 101 A.L.R. 646, 152 A.L.R. 336, and 170 A.L.R. 1076.

[23]Pavletich v. Pavletich (1946) 50 N.M. 224, 174 P.2d 826.

[24]Nevada Compiled Laws, Supplement, 1931-41, 9467.01; Herrick v. Herrick (1933) 55 Nev. 59, 25 P.2d 378, 379; and see also cases cited in annotations in 63 A.L.R. 1133 and 159 A.L.R. 734.

able in the Islands. We think, however, that evidence of misconduct on the part of the plaintiff may be considered by the court along with all the other evidence in determining whether, in the discretion of the court,[25] the best interests of the parties and of the public will be served by the granting of a divorce. It has been so held by the Supreme Court of New Mexico under the statute of that state[26] and we regard the rule as sound and in the public interest.

As we have said, the evidence in this case supports a finding of incompatibility of temperament between the parties. Since the cruelty of the plaintiff to the defendant does not under the Virgin Islands law bar the granting of a divorce to the plaintiff on the ground of incompatibility and, in our judgment, was not such as to call for the discretionary denial of the divorce he seeks, it appears that the plaintiff was entitled to a divorce. It follows that the decree which the District Court entered in his favor is supported by the facts of the case and the legal rules applicable thereto. It remains to be determined whether the defendant is also entitled to a divorce under her counterclaim upon the ground of the plaintiff's cruelty toward her. For when recrimination is not a bar the court may grant a divorce on both complaint and counterclaim if the evidence justifies it.[27]

Subdivision (5) of Section 7 of the Divorce Law (16 V.I.C. § 104(a)(5)) fixes as a cause for divorce: "Cruel and inhuman treatment calculated to impair health or endanger life." It has been held that there is no

[25]Sec. 7 of the Divorce Law [16 V.I.C. § 104] provides that the dissolution of the marriage contracts *may* be declared for the causes therein enumerated. Discretion to grant or deny a divorce is thus lodged in the courts.

[26]Clark v. Clark (1950) 54 N.M. 364, 225 P.2d 147, 21 A.L.R.2d 1263.

[27]Divorces have been granted to both parties in other jurisdictions. See Schirmer v. Schirmer (1915) 84 Wash. 1, 145 Pac. 981; Simmons v. Simmons (1936) 122 Fla. 325, 165 So. 45.

exact inclusive and exclusive definition of "cruel and inhuman treatment" which can be used as a standard yardstick,[28] but that the court must determine whether the facts in the particular case constitute such cruelty or not.[29] The cruel and inhuman treatment which entitles a party to a divorce must be such as to endanger life or health.[30] A single act of physical violence[31] has been held to be cruel and inhuman treatment and where it was shown that the husband had so little control over his passions that on any provocation he was likely to repeat the one act of personal violence the court determined that the wife had suffered cruel and inhuman treatment.[32] The statute further stipulates that the cruelty must be "calculated" to impair health or endanger life. Does this mean that it must be intended to do so? We think not. As we have seen, this ground for divorce, as contained in Section 7, was taken directly from the Alaska Code of Civil Procedure.[33] We are in accord with the District Court of the Territory of Alaska in holding that the word "calculated" as used in these statutes means "likely to" rather than "intended to" impair health or endanger life.[34]

■ We turn then to the evidence of cruelty. The defendant alleges that by reason of the plaintiff's cruelty she deems it unsafe to longer live with him. At the trial the plaintiff admitted several instances when he lost his temper and used physical violence on the defendant. At one time he choked her. After this happened he moved away from their home because he "was afraid it might happen again and [he] would not come out of it as soon."

[28] Waid v. Waid (1946) 117 Ind. App. 4, 66 N.E.2d 907, 908.
[29] Wilson v. Wilson (1949) 229 Minn. 126, 38 N.W.2d 154, 156-157.
[30] Dillavou v. Dillavou (1945) 235 Iowa 634, 17 N.W.2d 393, 394.
[31] Jury v. Jury (1934) 242 App. Div. 476, 275 N.Y.S. 586.
[32] Beyer v. Beyer (1880) 50 Wis. 254, 6 N.W. 807, 808.
[33] See notes 10 and 11.
[34] Day v. Day (1916) 5 Alaska 584, 586-587.

There was other evidence of cruelty which we need not recount. Suffice it to say we find that the plaintiff was guilty of such cruel treatment of the defendant as to entitle her to a divorce on that ground. It follows that the decree of the district court must be modified by striking therefrom the approval of the verdict of the jury and by providing that both plaintiff and defendant shall be granted an absolute divorce forever dissolving the marriage entered into between them on August 23, 1947.

One further matter remains for consideration. The defendant in her counterclaim not only sought a divorce but also alimony. In view of the jury's verdict against the defendant this was refused by the district court. But in the light of our conclusion that the defendant is herself entitled to a divorce it must be reconsidered. The defendant makes her claim under Section 12 of the Divorce Law (16 V.I.C. § 109) which provides that:

"Whenever a marriage shall be . . . dissolved the Court shall have power to further decree . . . (3) For the recovery from the party in fault such an amount of money, in gross or in installments, as may be just and proper for such party to contribute to the maintenance of the other."

▉ It will be observed that under this statute alimony may only be recovered from the "party in fault"[35] in a divorce suit in which a divorce decree is granted. Is the plaintiff a "party in fault" in the present suit within the meaning of Section 12? It can certainly be said that he is the party at fault in the defendant's counterclaim since we have held that the defendant is entitled to a divorce under the counterclaim by reason of the plaintiff's cruelty. But we think that the phrase

[35]Under the identical provision of the Alaska Code it has been held that alimony may be allowed to either husband or wife. Olsen v. Olsen (1916) 5 Alaska 459.

581

"party in fault" as used in Section 12 is intended to refer compendiously not merely to parties whose overt acts constitute grounds for divorce but also to any party whose disability or defect of body, mind or temperament may have deprived the other party of the opportunity of enjoying a normal marital relationship. In this sense the plaintiff is a party at fault in his own suit for divorce on the ground of incompatibility. For, as we have already pointed out, incompatibility of temperament necessarily involves both parties so that in a very real sense the incompatible temperament of each party has deprived the other of a normal marital relationship. This means, of course, that in this same sense the defendant was also at fault in the plaintiff's suit brought on the ground of incompatibility. Under the circumstances we conclude that both parties were at fault within the meaning of Section 12.

██ ██ This, however, does not necessarily preclude the defendant from receiving an award of alimony from the plaintiff. On the contrary Section 12 of the Divorce Law vests in the District Court full power to require a party at fault to contribute to the maintenance of the other party, if it is just, equitable and in the public interest to do so, even though the other party be also somewhat at fault. Whether an award of alimony shall be made, as well as the amount to be awarded, is within the discretion of the court, having regard to the conduct of both parties, the amount of property of each and all the other circumstances of the case.[36] In the present case the District Court has not yet given any consideration to this problem. The rejection of the defendant's claim for alimony was not the result of an exercise of judicial discretion by the court but purely the result of the denial of her counterclaim for divorce which, as we have

[36]Keezer, Marriage and Divorce, 3d Ed. 1946, § 568.

seen, was erroneous. There is, therefore, no action for us to review on this branch of the case and it must accordingly be remanded for consideration of the defendant's counterclaim for alimony.

The decree of the District Court will be modified as indicated in this opinion and as so modified will be affirmed. The cause will be remanded with directions to the District Court to consider the defendant's counterclaim for alimony if within thirty days after the coming down of the mandate of this court she moves for its consideration.